UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited, <br><br> Plaintiff, <br><br> v. <br><br> 6.21 CARAT DIAMOND, <br><br> Defendant-in-rem, <br><br> Jay Waldmann, <br><br> Claimant-Defendant. | Case No. 08-CV-2006 (SHS) |

## <u>Notice of Motion For a Declaratory Judgment on Default</u>

PLEASE TAKE NOTICE that upon the accompanying declaration of Sarah Anne Kutner, together with the affidavit of Les Turner, supporting exhibits, Memorandum of Law, and all prior pleadings and proceedings had herein, plaintiffs Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited (the "Insurers") will move against Defendant Jay Waldmann before the Honorable Sydney H. Stein at the United States Courthouse, Southern District of New York, 500 Pearl Street, New York, New York 10007, on May 9, 2008, for an Order granting the Insurers' motion for a declaratory judgment and order on default pursuant to Fed. R. Civ. Proc. 55, and Rules 55.1 and 55.2(a) of the Civil Rules for the Southern and Eastern Districts of New York (1) Declaring that the defendant has no right, title or interest in or to the Diamond, and that all right, title and interest in and to the Diamond is vested exclusively in the Insurers; (2) Ordering that the

Diamond be turned over immediately by GIA to the Insurers, the rightful owners of the Diamond as subrogors of David Morris; (3) Imposing a constructive trust on the Diamond; (4) Ordering the defendant to produce, in writing, any and all information in his knowledge or possession regarding the identity of the person from whom or the entity from which he purchased the Diamond; (5) Awarding the Insurers the costs and disbursements of this action; and (6) Awarding the Insurers such other and further relief as the Court deems just and proper. and for such other and further relief as this Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that opposition, if any, to the Underwriters' motion must be served upon the undersigned counsel on or before May 16, 2008.

Dated:   New York, New York
         May 9, 2008

                                    **NIXON PEABODY LLP**

                                    _[signature]_

                                    Aidan M. McCormack (AMM-3017)
                                    Sarah Anne Kutner (SAK-6516)
                                    437 Madison Avenue
                                    New York, New York 10022
                                    (T) (212) 940-3000
                                    (F) (212) 940-3111
                                    *Attorneys for Plaintiffs*

TO:   Robert L. Tucker, Esq.
      Counsel to Jay Waldmann
      Tucker & Latifi, LLP
      160 East 84th Street
      New York, NY 10028
      (T) (212) 472-6262
      (F) (212) 744-6509

      Mr. Jay Waldmann
      25 Main Street
      Southampton, NY 11968

Mr. Jay Waldmann
c/o Martin M. Bell
350 5th Avenue, Suite 7412
New York, NY  10118

Todd B. Marcus, Esq.
DLA Piper
Counsel to GIA, Inc.
1251 Avenue of the Americas
New York, New York 10020-1104

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>6.21 CARAT DIAMOND,<br><br>                                Defendant-in-rem,<br><br>Jay Waldmann,<br><br>                                Claimant-Defendant. | **Declaration of**<br>**Sarah Anne Kutner**<br><br><br><br>Case No. 08-CV-2006<br>(SHS) |

SARAH ANNE KUTNER, an attorney duly admitted to practice before this Court and the Courts of the State of New York, declares the following under penalty of perjury:

1.      I am duly admitted to practice law before the United States District Court for the Southern District of New York.

2.      I am an associate with the law firm of Nixon Peabody LLP, counsel for plaintiffs Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited (the "Insurers"). As such, I am fully familiar with the facts of this matter set forth herein based on my review of the file and handing of this case.

3.      I submit this Declaration, together with the affidavit of Les Turner, accompanying exhibits and Memorandum of Law, in support of the Insurers' motion, pursuant to Rule 55 of the Federal Rules of Civil Procedure and Rules 55.1 and 55.2 (a) of the Civil Rules for the Southern

and Eastern Districts of New York for a declaratory judgment and order on default against defendant Jay Waldmann.

4.    Mr. Waldmann has failed to respond to the complaint within the time required by Rule 12(a) of the Federal Rules of Civil Procedure ("FRCP"). As such, he is in default in this action, as shown by the Clerk's certificate of default, attached as **Exhibit S**.

5.    Accordingly, it is respectfully submitted that this Court grant a judgment on default against the defendant: (1) Declaring that the defendant has no right, title or interest in or to the Diamond, and that all right, title and interest in and to the Diamond is vested exclusively in the Insurers; (2) Ordering that the Diamond be turned over immediately by GIA to the Insurers, the rightful owners of the Diamond as subrogors of David Morris; (3) Imposing a constructive trust on the Diamond; (4) Ordering the defendant to produce, in writing, any and all information in his knowledge or possession regarding the identity of the person from whom or the entity from which he purchased the Diamond; (5) Awarding the Insurers the costs and disbursements of this action; and (6) Awarding the Insurers such other and further relief as the Court deems just and proper.

6.    This action was commenced by the Insurers on February 28, 2008, seeking, among other things, a declaration that the Insurers possessed superior right and title to the Diamond as against the defendant as subrogors of David Morris. *See* complaint at Docket Entry #1.

7.    The Diamond is being held by GIA with the consent of both the Insurers and Mr. Waldmann, through his attorney, Robert L. Tucker Esq. of Turner & Latifi, LLP. *See* e-mail dated June 25, 2007, attached as **Exhibit T**.

8.    The Court has *in rem* jurisdiction over the Diamond because it is being held by GIA at their New York location, upon information at believe at 589 Fifth Avenue, New York,

NY 10017, until they are presented with an order from a court or similar authority directing to whom the Diamond is to be given as the rightful owner. *See* **Exhibit T**.

9.      GIA has not conveyed a claim of ownership to the Diamond to the Insurers or this firm. Upon information and belief, GIA does not intend to make such a claim and is simply holding the Diamond until a court or similar authority decides who is its rightful owner, at which time it will surrender the Diamond to that owner.

10.      Therefore, the parties to this action have constructive possession of the Diamond, and the Court has *in rem* jurisdiction over it, giving the Court the right to render a judgment as to its rightful owner.

11.      Mr. Waldmann was provided the summons and complaint in this action through Mr. Tucker. *See* e-mail dated March 4, 2008, attached as **Exhibit M** (attachments omitted). Mr. Tucker previously identified himself to this firm as Mr. Waldmann's personal attorney, and has been corresponding with this firm, and with GIA and its attorneys, on Mr. Waldmann's behalf from June 2007 through the present in connection with Mr. Waldmann's claim to the Diamond.

12.      Mr. Tucker responded that he did not have authority to accept service on behalf of Mr. Waldmann. *See* reply e-mail attached as **Exhibit N**.

13.      Service was also made on Mr. Waldmann by mail methods. Mr. Waldmann was provided with the summons and complaint in this action through regular mail, both to his Southampton address, and to his address in Germany. *See* letter dated March 5, 2008, attached as **Exhibit O** (attachments omitted).

14.      Mr. Tucker admitted that Mr. Waldmann did in fact receive the correspondence sent to him in Germany. *See* reply e-mail dated April 10, 2008, attached as **Exhibit P**.

15.      Mr. Waldmann was also served through his agent Martin M. Bell, of Bell & Company LLP at 350 5th Avenue, Suite 7412, New York, New York. *See* **Exhibit Q**. Bell &

Company LLP is listed on the New York Department of State, Division of Corporations website as the agent for service of process for Mr. Waldmann's corporation, Waldmann Inc. *Id.* Mr. Bell stated at the time of service that he was authorized to accept service on Mr. Waldmann's behalf. *Id.*

16.    Mr. Tucker was also notified that the initial conference, originally scheduled for April 11, was adjourned, and that the Insurers intended to file a default motion against Mr. Waldmann. *See* e-mail dated April 10, 2008, attached as **Exhibit R**.

17.    Mr. Waldmann has failed and refused to answer the complaint in this action, despite the many notices and opportunities to respond. Indeed, by all appearances he has left the country and abandoned any claims to the Diamond.

18.    Mr. Waldmann's time to respond to the complaint has now expired under FRCP 12(a). As the Insurers have shown that they have superior right, title and interest in the Diamond as subrogors of David Morris, the Insurers respectfully submit that they are entitled to a declaratory judgment and order on default against Mr. Waldmann.

WHEREFORE, the Insurers respectfully request that this Court grant a declaratory judgment and order on default against the defendant: (1) Declaring that the defendant has no right, title or interest in or to the Diamond, and that all right, title and interest in and to the Diamond is vested exclusively in the Insurers; (2) Ordering that the Diamond be turned over immediately by GIA to the Insurers, the rightful owners of the Diamond as subrogors of David Morris; (3) Imposing a constructive trust on the Diamond; (4) Ordering the defendant to produce in writing to the Insurers any and all information in his knowledge or possession regarding the identity of the person from whom or the entity from which he purchased the Diamond; (5)

Awarding the Insurers the costs and disbursements of this action; and (6) Awarding the Insurers such other and further relief as the Court deems just and proper.

Dated: Jericho, New York
      May 9, 2008

                                       Sarah Anne Kutner (SK-6516)

10987042.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited, <br><br> Plaintiff, <br><br> v. <br><br> 6.21 CARAT DIAMOND, <br><br> Defendant-in-rem, <br><br> Jay Waldmann, <br><br> Claimant-Defendant. | **Affidavit in Support of Motion for Declaratory Judgment and Order on Default** <br><br><br> Case No. 08-CV-2006 (SHS) |

| | | |
|---|---|---|
| **UNITED KINGDOM** | ) | |
| | ) | **ss.:** |
| **LONDON** | ) | |

**Leslie. M. Turner**, being duly sworn, deposes and states:

1.     I am assistant claims adjuster for Marlborough Underwriting Agency Ltd at Lloyds, and handle the claim for the defendant-in-rem 6.21 carat diamond at issue in this litigation (the "Diamond").  As such, I am fully familiar with the facts as set forth herein based on my review of the file and records and my involvement and handling of this matter.

2.     I submit this Affidavit in support of plaintiffs' Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited (the "Insurers") motion for a declaratory judgment and order on default against defendant Jay Waldmann: (1) Declaring that the defendant has no right, title or interest in or to the Diamond, and that all right, title and interest in and to the Diamond is vested exclusively in

- 1 -

the Insurers; (2) Ordering that the Diamond be turned over immediately by GIA to the Insurers, the rightful owners of the Diamond as subrogors of David Morris; (3) Imposing a constructive trust on the Diamond; (4) Ordering the defendant to produce, in writing, any and all information in his knowledge or possession regarding the identity of the person from whom or the entity from which he purchased the Diamond; (5) Awarding the Insurers the costs and disbursements of this action; and (6) Awarding the Insurers such other and further relief as the Court deems just and proper.

### Factual History

3.     David Morris International Ltd. ("David Morris") maintains a high-end jewelry store at 24/25 New Bond Street, London, United Kingdom. David Morris purchased the Diamond from G. Music and Sons Limited, 63-66 Hatton Garden, London, for a purchase price of $111,500.00, in November 2000. A copy of the invoice from that sale is attached as **Exhibit ___**.

4.     Before David Morris purchased the Diamond, it had been graded and registered with the Gemological Institute of America ("GIA"), which assigned the Diamond GIA number PD1846 and issued a corresponding diamond grading report number 11326214 on October 16, 2000 (the "Report"). A copy of the Report is attached as **Exhibit B**. The G. Music and Sons invoice bears the numbers PD1846, corresponding with the same number on the Report. *See* **Exhibits A** and **B**.

5.     The Report stated that the diamond weighed 6.21 carats and measured 12.69mm x 9.35mm x 5.84mm. The report further stated that the diamond's depth measures 62.5%, its table measures 56%, its polish and symmetry were classified as "good," its clarity was classified "WS1" and its color was classified "E." *See* **Exhibit B**.

- 2 -

6.     After purchasing the diamond, David Morris inventoried the piece in its collection under Stock Card number 11-21-849 on November 15, 2000. A copy of the Stock Card is attached as **Exhibit C**. The Stock Card lists work performed on the diamond in David Morris' workshop and a breakdown of the amount of the labor costs. It indicates that labor was performed on the Diamond while setting it in a platinum ring. *See* **Exhibit C**.

7.     On December 29, 2001, at 11:15 a.m. two masked thieves smashed the front glass window of David Morris' New Bond Street store with sledge hammers and stole several pieces of jewelry from the window display (the "Theft"). A December 30, 2001 article from the *BBC News*, and a January 10, 2002 article from the *Evening Standard*, both describing the details of the Theft, is attached as **Exhibit D**.

8.     The Diamond, set in a platinum ring at the time, was stolen, along with five other rings, a diamond necklace and a white gold and diamond bracelet-watch. *See Evening Standard* news article, at **Exhibit D**. The stolen jewelry was estimated to be worth almost £4 million. *See* **Exhibit D**. David Morris employees present at the time of the theft and British authorities pursued the thieves, but were unable to apprehend them. *Id.*

9.     Before the Theft, David Morris acquired insurance policy number NA3471501 through Heath Lambert Limited, with a policy period of July 1, 2001 to June 30, 2002 (the "Policy"). A copy of the slip from the London market is attached as **Exhibit E** and a copy of the Policy is attached as **Exhibit F**. Several different companies and Insurers subscribed to the policy, sharing the risk severally, not jointly. *See* "Several Liability Notice", at **Exhibit E**.

10.     The Policy covers "all risks of physical loss of or damage to the insured valuables from whatever cause arising." *See* "Risks Covered" at **Exhibit F**, page 1. The section entitled "Property Insured" states that the Policy covers "'Stock' . . . including jewelry, diamonds,

- 3 -

precious stones of any sort whatsoever, gold or silver or ornaments or plates, pearls and/or merchandise and material usual to the conduct of the Assured's business . . . from the time the Assured acquires an interest therein . . . whilst anywhere in the world in transit or at rest." *See* **Exhibit F**, page 1. The Schedule of Assureds includes "David Morris International Ltd." *See* "Schedule of Assureds" at **Exhibit F**, page 10.

11.     After the Theft, David Morris tendered a claim under the Policy for the stolen items. The Insurers consequently performed an extensive audit of David Morris' books and records documenting the value of the stolen jewelry. A copy of the Final Report on Theft Claim by David Morris is attached as **Exhibit G**.

12.     The Insurers paid $2,498,807.38 and £50,245.58 to David Morris pursuant to the terms of a Form of Acceptance and Schedule of Stolen Jewelry and Watch Attaching to Form of Acceptance ("Form of Acceptance"). A copy of the Form of Acceptance is attached as **Exhibit H**. Under the terms of the Form of Acceptance, David Morris agreed that "upon payment of the said sum by the Interested Insurers they will become subrogated to all our title, rights and interests in the items subject of the attached schedule and in any damages or monies recoverable in respect thereof in respect of salvage or otherwise whatsoever." *See* **Exhibit H**.

13.     To the knowledge of the Insurers, no one has apprehended the thieves or recovered any of the stolen jewels to date.

### Recovery of the Diamond

14.     The Insurers were first notified by telephone on or about July 17, 2006 that GIA had recovered a diamond that may have been part of the jewelry stolen in the Theft from David Morris on December 29, 2001. *See* e-mails dated July 19 and July 24, 2006, attached as **Exhibit I**.

- 4 -

15.    The July 19, 2006 e-mail attached a letter wherein David Morris requested that GIA register in it's stolen database the stones stolen from David Morris in the Theft. The letter attached a list of the stolen stones with their corresponding GIA numbers. *See* **Exhibit I.** Included on the list is the Diamond, listed at 6.21 carats, certified on October 16, 2000.

16.    The Insurers then received a letter dated July 24, 2006 from DLA Piper, attorneys for GIA, acknowledging that GIA had received a claim of ownership for the Diamond from David Morris "through its insurer, the Heath Lambert Group" (broker who issued the Policy for the Insurers). A copy of the July 24, 2006 letter is attached as **Exhibit J.** The letter further indicated that there was a competing claim of ownership by the "Submitting Client" and sought the consent of David Morris and Heath Lambert to disclose their identities and contact information to that Submitting Client. GIA indicated that it was seeking similar permission from the Submitting Client.

17.    GIA's counsel sent a letter dated January 24, 2007 to both David Morris and Robert Tucker, Esq. (as "*Counsel for Jay Waldmann*") confirming that the two parties had competing claims of ownership for the Diamond *See* letter, attached as **Exhibit K.** The letter references two numbers, one of which – 11326214 – corresponds to the number on the Report, at **Exhibit B**.

18.    The Insurers assert their rights as the subrogated owners of the property listed on the Form of Acceptance, which includes the Diamond, and claim superior right, title and interest in and to the Diamond as against any other claimant, including Mr. Waldmann. *See* Schedule at **Exhibit H**.

19.    However Mr. Waldmann acquired the Diamond, he does not have proper legal title, as the Diamond was stolen, along with many other valuable jewels, from David Morris.

The Insurers also believe that Waldmann is likely to possess information that may lead to the recovery of the other stolen jewelry.

WHEREFORE, the Insurers respectfully request that this Court grant a judgment on default against the defendant: (1) Declaring that the defendant has no right, title or interest in or to the Diamond, and that all right, title and interest in and to the Diamond is vested exclusively in the Insurers; (2) Ordering that the Diamond be turned over immediately by GIA to the Insurers, the rightful owners of the Diamond as subrogors of David Morris; (3) Imposing a constructive trust on the Diamond; (4) Ordering the defendant to produce in writing to the Insurers any and all information in his knowledge or possession regarding the identity of the person from whom or the entity from which he purchased the diamond; (5) Awarding the Insurers the costs and disbursements of this action; and (6) Awarding the Insurers such other and further relief as the Court deems just and proper.

Dated: London, UK
     May 9, 2008

 

Leslie M Turner

Sworn to before me this
__ day of May, 2008

Notary Public

Notary Public London England (Ella E. Imison)

My Commission expires at Death

Imison & Co.
Notaries Public
City Tower
40 Basinghall Street
London, EC2 5DE
Telephone: 020 7448 4860
Fax: 020 7448 4861

- 6 -

# G. Music and Sons Limited

63-66 Hatton Garden
London, EC1N 8LE
Telephone : 0207-404 4008
Fax:        0207-831 8346

# Invoice

| VAT REG NO | TAX DATE | INVOICE NO |
|---|---|---|
| GB 577 6569 74 | 14/11/00 | 2384 |

**INVOICE TO**

DAVID MORRIS INTL LTD
4TH FLOOR
24/25 NEW BOND STREET
LONDON W1Y 9HD

| DESCRIPTION | | AMOUNT |
|---|---|---|
| USD2225  1 EMERALD CUT DIAMOND 6.21ct | ALL AT | 111,500.00 |
| | | 0.00 |
| G.I.A  E V.V.S.I. | | |
| TERMS  45 DAYS | | |
| VAT ON STERLING INV VAT 196 | | |

*(handwritten) PJ1846.*

*(handwritten) JV  40% = Trireme  0973  20/11/2e*

*(handwritten) 10% = Old.  0974  20/11/2e*

*(handwritten) BH433*

*(handwritten) CHECKED 2 3 NOV 2000*

Dealers and manufacturers in fine jewellery, Diamonds and Coloured Stones

| | |
|---|---|
| SUBTOTAL | 111,500.00 |
| VAT TOTAL | 0.00 |
| Total | £111,500.00 |

All Goods To Remain The Property of G. Music and Sons Ltd. until Paid in Full.

Whilst every care and precaution is taken to prevent accidents, no responsibility can be attached to us for any damage to customer's stones whilst in the process of being worked upon

Piece 11-21-849  Material Picture 1
Caption PD1846  Description: WHITE DIAMOND EMERALD CUT 6.21cts E/VVS1  File PD1846.jpg

## GIA
### GEM TRADE LABORATORY

**GIA REPORT 11326214**

DIAMOND GRADING REPORT

67853101

October 16, 2000

| | |
|---|---|
| Shape and Cutting Style | EMERALD CUT |
| Measurements | 12.69 x 9.35 x 5.84 mm |
| Weight | 6.21 carat |

**Proportions**

| | |
|---|---|
| Depth | 62.5 % |
| Table | 56 % |
| Girdle | THIN TO THICK |
| Culet | SMALL |

**Finish**

| | |
|---|---|
| Polish | GOOD |
| Symmetry | GOOD |
| Clarity Grade | VVS1 |
| Color Grade | E |
| Fluorescence | NONE |

Comments:
NONE



**KEY TO SYMBOLS**

- Pinpoint
- Extra Facet





IMPORTANT DOCUMENT. STORE SAFELY

NOTICE: IMPORTANT
LIMITATIONS ON BACK

STOCK CARD FOR PIECE CODE. 11-21-849

Type SSS Programmer FS WIP Code 84433 Origin UK Status: S

Description EMERALD CUT DIA PLAT RING WITH EMERALD CUT DIA SHOULDERS

Carnet Weight: 15 Entered 15/11/00 Warehouse: 2 Transferred 20/11/00

Client: STOLEN *** NOT ON FILE ** Sold Invoice No

Standard Cost 77645.89 Fixed False Export Price: 163057 RRSP 195000 Flag

Currency Breakdown
$ 113959.99 £ 150.00 Labour Costs in Sterling 1522.56

| Stock (Material) Code & Description | | | Qty | Currency | | £ Cost |
|---|---|---|---|---|---|---|
| PD1846 | WHITE DIAMOND EMERALD CUT | | 6.21 | $ | 17954.91 | 74333.33 |
| PLAT | PLATINUM | | 10.00 | £ | 15.00 | 150.00 |
| W.D.E. | WHITE DIAMOND EMERALD CUT | STR001 | 1.23 | $ | 2000.00 | 1640.00 |
| | | | | | TOTAL: | 76123.33 |

Materials Breakdown:
PD1846 GIA 6.21 E/VVS1

WDE 7.44

| Operator Name | | Operation | | Lab Cost | Recovery | Latest |
|---|---|---|---|---|---|---|
| JW | JOHN WATES | POL | POLISHING | 25.00 | 12.50 | 20/11/00 |
| KM | KEITH MILNER | SET | SETTING | 60.00 | 30.00 | 22/11/00 |
| MT | MARK THOMAS | CUT | CUTTING | 25.00 | 12.50 | 01/12/00 |
| SP | STEVE PICKERING | MTG | MOUNTING | 528.24 | 829.32 | 21/11/00 |

over head rate 50%

applied rate to hours for own employees

Labour Cost Adjustment: 0 Totals: 638.24 884.32
Total Labour: 1522.56

Labour Cost Breakdown:
CUT 37.50 MTG 1357.56 SET 90.00 POL 37.50 OTH

[illegible handwriting] £38k

Caption: 11-21-849   Description: plat ring em cut



CATEGORIES  TV  RADIO  COMMUNICATE  WHERE I LIVE  INDEX  SEARCH          Go!

# BBC NEWS

You are in: UK: **England**
Sunday, 30 December, 2001, 13:39 GMT

Front Page
World
UK
England
Northern Ireland
Scotland
Wales
UK Politics
Business
Sci/Tech
Health
Education
Entertainment
Talking Point
In Depth
AudioVideo

## £3m raid on exclusive jewellers


Luxury items were grabbed from the window display

**BBC SPORT**
**BBC Weather**

**SERVICES**

Daily E-mail
News Ticker
Mobiles/PDAs

Feedback
Help
Low Graphics

Gems believed to be worth more than £3m have been stolen by two raiders who smashed their way into a top London jewellery store.

Luxury items were grabbed from a window display of David Morris Jewellers in New Bond Street, central London, on Saturday morning, Scotland Yard said.

The raiders, both described as white, ran off in the direction of Old Bond street and through the Royal Arcade before escaping in a nearby car.

Clients of the store are said to include pop star Elton John and David and Victoria Beckham.

The audacious theft comes just days after an armed gang targeted Harvey Nichols - one of the capital's most famous stores - escaping with gems valued at less than £160,000 on Christmas Day.

Masked gunmen tied up and blindfolded two security guards after entering the store in Knightsbridge, central London, through a staff entrance.

No-one was injured as

**See also:**

27 Dec 01 | England
Harvey Nichols reopens after raid
26 Dec 01 | England
Armed raid at Harvey Nichols
27 Jun 01 | UK
Cartier watches stolen in £4m raid

**Internet links:**

Harvey Nichols
Metropolitan Police
David Morris

The BBC is not responsible for the content of external internet sites

**Top England stories now:**

Tories attack Brixton drugs scheme
Police shoot man on the M6
Leanne killer jailed for life
IVF mix-up heads for court
Inquiry into warship accident
Britain 'sheltering al-Qaeda leader'
Venables named Leeds boss
Transplant first for cancer patient

**Links to more England stories are at the foot of the page.**

a result of the raid and the store reopened its doors on Thursday to launch its winter sale.

A Scotland Yard spokesman said staff from David Morris were believed to have set off a panic alarm, before pursuing the robbers and taking down the suspects' car registration number.



The raiders smashed their way into the store

He added: "Because of their quick thinking, police have now found the abandoned getaway vehicle, which is believed to have been stolen."

✉ **E-mail this story to a friend**

**Links to more England stories**

In This Section                    GO

© **BBC**  ^^ **Back to top**

**News Front Page | World | UK | UK Politics | Business | Sci/Tech | Health | Education | Entertainment | Talking Point | In Depth | AudioVideo**

---

**To BBC Sport>> | To BBC Weather>>**

---

© **MMIII | News Sources | Privacy**

# The £4 million haul



Cops police issued these photographs of pieces taken in the Bond Street raid in the hope that someone will recognise them

**By Philip Nettleton**

IT IS probably Britain's biggest smash and grab raid. Last month thieves stole almost £4 million worth of jewels from a Bond Street shop in front of hundreds of people in broad daylight.

It was just the latest in a series of robberies as the West End experienced a significant increase in raids on jewellers by...

## Police warning over spate of jewel thefts

**Evening Standard** Thursday...

**PRIVATE EYE**

## Ken 'backs down' on new Thames crossing

of people in broad daylight.

But it was just the latest in a series of robberies as the West End experienced a significant increase in raids on jewellers by organised gangs, it emerged today.

The revelation came as police announced a £100,000 reward for the return of the gems and for photographs of some of the gems stolen from the David Morris shop in Bond Street. The customers include David and Victoria Beckham, Sir Elton John and members of the royal family.

The most expensive piece, valued at £1.8million, is a diamond necklace.

"Regular white men used sledgehammers to break the window display and snatch jewels before making off in a car just before 11am on 25 December.

Staff at the shop, which supplied jewels for the James Bond films GoldenEye and Diamonds Are Forever, chased the thieves and got the registration number of the grey Nissan Sunny getaway car. It had been stolen a few days earlier and was found abandoned in Curzon Street an hour later.

In the haul was a £90,000 gold watch, a diamond-encrusted surround, and a diamond platinum rings.

"A Met police spokeswoman said: "It dealers have been offered these brilliant jewels we need to know.

"It is feared the necklace has been broken up into separate pieces, which would lower its value. David Morris said a flawless yellow diamond ring was valued at £700,000 and an oval diamond ring was worth £200.

Mr Morris said today: "I fear the diamonds will be repolished and re-certified and will have gone abroad, probably to America, Israel or Russia. It is very unlikely they will be traced in Britain.

"They were organised job, and they knew all fantastic. I think it was an exactly what they were after."

The David Morris raid follows a string of brazen thefts from jewellers and antique and art dealers. Flying Squad officers were looking at the possibility this raid was linked to a £100,000 jewel theft from Harvey Nichols department store on Christmas Day.

Another dealer in New Bond Street recently had a £300,000 George III silver wine cooler stolen. Richmond, painting stolen, thieves were captured on CCTV taking the work from the wall and walking out of the Fine Art Society gallery with the painting in a designer carrier bag.

In another robbery an art grabbed from a window bronze was at a shop in Piccadilly. Earlier this month burglars crept across rooftops to steal £250,000 worth of Far Eastern artefacts.

Bond and New Bond Street jeweler Dunley and Shinner has been hit twice in the past year. The Evening Standard seven months had called in a squad of former SAS men to carry out patrols.

There was a 35 per cent rise in theft of raids last year. The number of raids has climbed from 21 in 1998 to 62 last year.

Anyone with information about the David Morris raid should ring the Flying Squad on 020 8247 7582 or Crimestoppers anonymously on 0800 555 111.

### ON SALE NOW — £1.20

PRIVATE EYE



## Ken 'backs down' on new Thames crossing

THE MAYOR has been accused of a U-turn on plans for a new crossing over the Thames, writes Peter Gruner.

Anti-road campaigners claim that, in an election hustings 18 months ago, Ken Livingstone said a crossing "would be built

over my dead body". But now the Greater London Authority is arguing for a crossing at Beckton to Thamesmead.

Local campaigners fear London's atrocious news for London's environment, it is also a major betrayal of an election pledge, gave before he was elected.

A GLA spokesman said Mr Livingstone origin-

ing, said: "Ken only it now the backing for this crossing now real bridge disaster.

"Since then, however, likely economic benefits and environmental harm made the case for a new crossing "overwhelming", he added.

nally opposed the crossing over environmental and social concerns.

| POLICY NO. NA3471501 | 839 HLL |

# ◉ Heath Lambert Limited

ILU

**Assured:**

(D)AVID MORRIS INTERNATIONAL

**Reassured:**

**Related Slips / Reinsurances:**

| Renewal of: | Renewal Date: |

| Number of Slips | Amount Written Hereon | |
|---|---|---|
| 1 | 100% | 100% |

**FOR L.P.S.O USE**

**FOR L.I.R.M.A. USE**

D.F

**FOR I.L.U. USE**

IUA of London LRH

B0839N0121484
PMC 01 158249 12 10
90.9259%
GBP        37557.85

| POLICY NO. | 839 |
|---|---|
| NA3471501. | HLL |



# Heath Lambert Limited

LLOYDS.

| Assured: |
|---|
| DAVID MORRIS INTERNATIONAL. |

| Reassured: |
|---|
| |

| Related Slips / Reinsurances |
|---|
| |

| Renewal of: | Renewal Date: |
|---|---|
| | |

| Number of Slips | Amount Written Hereon | Total Written | Signing |
|---|---|---|---|
| 1 | 100% | 100% | |

| FOR L.P.S.O USE    2406789K |
|---|
| L.P.S.O V.L.C. |
| 21421*05-10-2001   01 |
| 6465? |

| FOR L.I.R.M.A. USE |
|---|
| |

| FOR I.L.U. USE |
|---|
| |

ITSC28000H

# Heath Lambert Limited

**839 HLL**

| POLICY NO. | REF NO. |
|---|---|

| UNIQUE MARKET REFERENCE | SLIP REGISTRATION | | |
|---|---|---|---|
| | LLOYDS | ILU | LIRMA |

| BINDING AUTHORITY REGISTRATION NO. & DATE | RISK CODE(S) |
|---|---|
| | R&T JB |

| D.T.I. CODE | TOC TRIBUNAL | TERMS OF SETTLEMENT | | | | |
|---|---|---|---|---|---|---|
| 8 | | SETT | DUE | DATE | DEF | ADJ |
| | | 10 | 10 | 01 | | |

**ASSURED/ACCOUNT**

| | ADJUST SCHEME | |
|---|---|---|
| | YES | NO |

| USB | COUNTRY OF ORIGIN | VAT |
|---|---|---|
| NUS / US | UK | X |

**OVERSEAS BROKER (NAME AND ADDRESS)**

| CURRENCY | SIGNED LINE % | GROSS PREMIUM | |
|---|---|---|---|
| | | IN ALL | WAR ONLY |
| TOTAL | 100 | 36192.15 | 43,450 |
| LLOYD'S | 49.0741 | | |
| ILU | | | |
| LIRMA | | | |
| OTHER COMPANIES | | | |

**FOR FUTURE USE**

| C.P.A. | | SERIAL NO. | CERTIFICATE NOS. | |
|---|---|---|---|---|
| YES | NO | | | |
| EC | | EC | EC | EC |
| CCI | | ESTABLISHMENT | SERVICES | N/A |
| BUREAU SCHEME NO. | | | BROKERS COVER NO. | |

| WRITTEN LINES | % PART | OF | ORDER WHOLE | ORDER | CLOSED FOR |
|---|---|---|---|---|---|

**Page 1**

**Market Agreements**

Leading Underwriters Agreement (N.M.A.)
Leading Underwriters Agreement (Lineslips)
C.L.U.A. (92), C.A.I.C. (92)
L.U.A.M.C.
L.U.A.M.H.
L.U.A.G.M.
LAUA Leading Underwriter Clause AVS. 100A

**Brokers Clauses**

P.T. Clause (N.M.A.)
Increases in Sum Insured up to 10% of written lines to
be agreen. Leading Underwriter only
Resignings, Offslips, signing slips and premium
adjustments (if required) to be agreed leading
underwriter only
Adjustments to be taken down without being initialled
by underwriters
Agree letters of credit as required
Agree waive sight of original signed policy in respect of
mid term cancellation of coverage
Brokers payment of premium and cancelling clause
Underwriters pay tax if applicable in accordance with
NMA regulations
L.P.C. authorised to sign and seal treaty wording as
agreed by leading I.U.A. company
Agree to hold covered renewals or extension in period
of up to 30 days on agreement of leading underwriter
only

**Policy Agreement Clauses**

Agree sign renewal policy if presented without
production of expiring slip and/or policy
L.P.C. authorised to sign direct policy documents prior
to premium payment in accordance with I.U.A. early
documentation scheme
Underwriters agree to sign policy "time on risk" without
production of policy documentation subject to no
known or reported losses
Wordings, specifications, clauses, warranties and
schedules to be initialled by leading underwriter only
Agree, if required, to issue Lloyd's policy on CO form
NMA 2074 following leading insurer hereunder
Agree sign slip policy if presented
Companies automatically authorise the leading
company to sign policies on their behalf

**All Underwriters subscribing hereto agree to
conform with the above**

Heath Lambert Limited

| Risk No.: NO131484 | UMR: NO131484 | Doc Ref: S06-AAH29647 (122) | Page: 2 |

**TYPE** All Risks

**SLIP FORM** J plus wording as agreed.

**ASSURED** DAVID MORRIS INTERNATIONAL LTD and/or for whom they have instructions or authority to insure as more fully described in the attached wording.

**CONVEYANCE** Any Conveyances and/or Air and/or Road and/or Rail and/or Personally Conveyed and/or Registered Post and/or Data Post and/or Air Freight and/or Any Conveyances and as more fully described in the attached wording.

**PERIOD** 1st July ~~June~~ 2001 to 30th June 2002 inclusive, 12.01 LST.

**VOYAGE** Worldwide.

**INTEREST** Stock and/or merchandise appertaining to the business of the Assured, as per wording.

**LIMIT(S)** GBP 20,000,000 any one loss and as per wording attached

**CONDITIONS** As per the attached wording:

**Terrorism**

NMA 2551 (4.3.93).
It is agreed that risks of United Kingdom Terrorism are included hereunder subject to a limit of GBP 10 million any one loss and in the aggregate during the annual Policy period.

**Deductible:** GBP 15,000 each and every loss.

Re-instatement of coverage held covered at additional premium to be arranged.

Additional locations held covered at additional premium to be arranged.

**Debris Removal Clause:**

This insurance is extended to cover, in addition to any other amount recoverable under this insurance, extra expenses reasonably incurred by the Assured for the removal and disposal, (including dismantling and/or demolishing and/or destruction and/or shoring and/or propping) of debris of the subject matter insured, or part thereof, by reason of damage thereto caused by an insured peril but excluding absolutely:-

Approved
. . . . . . . . /. . . .

06/08/'01 11:07 FAX 020 7560 3655    LF FAC P MILNE    ☐001/001

859 HLL        Heath Lambe t Limited

| Risk No.: N0131484 | UMR: N0131484 | Doc Ref: S06-AAH29647 (122) | Page: 3 |

1. any expenses incurred in consequence of or to prevent
   or mitigate pollution or contamination, or any threat
   or liability thereof.
2. the cost of removal of cargo from any vessel or craft.

In no case shall the insurers be liable under this Clause
for more than 10% of the insured value for the damaged
subject-matter removed.

### Errors and Omissions Clause:-

Unintentional errors or omissions in the making of
declarations shall not invalidate this insurance provided
steps be taken to rectify these as soon as they come to
the notice of the Assured.

### LSW 1001 Several Liability Notice

The subscribing insurers' obligations under contracts of
insurance to which they subscribe are several and not
joint and are limited solely to the extent of their
individual subscriptions. The subscribing insurers are not
responsible for the subscription of any co-subscribing
insurer who for any reason does not satisfy all or part
of its obligations.

ANNUAL PREMIUM:      GBP 295,000 in full per annum, payable in four equal
                     instalments. due *First quarter payable within 60
                     days of attachment .*

                     Insurance Premium Tax   5% of 50%

BROKERAGE:           Client Fee

~~ADMINISTRATION FEE:   GBP 5,000~~      AOL ✓
                                        26.6.01.

                                    *Deductible*
                                    £40,000 / US$ 55,000
                                    *but* £10,000 / £12,500 *self ins.*

*Outstanding advise 13.6.01 N.T.I.A. Subject
full review of policy terms and conditions in
the event of claim being presented.*

18.5185%   20%           ⚓ 1861 JW
                          BRM   26.6.01.

            0 1 S 3 0 8 9 4 7 0

┌─────────────┐
│ Approved    │
│ ........... │
│ ........... │
└─────────────┘



N0131484   D. Morris Int.                     839/HLL

18.5185:  20%            Page 4

**Terra Nova** 3622 / 01 /7  I U A

0 1 M T 8 6 0 0 2 A A

27/6/01

18.5185:  20%    ◼ **Württ**  3597 01 8  I U A    27/6/01

0 1 0 0 2 7 6 0 0 0 0 1

Württembergische Versicherung AG

cc. final wdg.

13.8889:  15%   Zurich Specialties London Limited
MARINE                       Ⓩ ZURICH  I U A

3759/1/2

0 0 0 6 8 1 2 0 1 T F S P D L

**NO FRONTING**

SUBJECT APPROVAL OF FINAL WORDING

27/6/01

9.2593%   10%   ⚓ **WTK** 457   28/6/01

8 0 5 0 1 2 7 7 8 X H

T 15%  WWD   imposed wording   13.6%
AP

N0131484                    D. NORTH INTL                    HLL/839

Page 5                                        X

4.6296 %   5%   Hardy 29/6/01   ×   DWT   THE
                                        3/82

MY35744K99KY

subject approval of final wording

3/7/01   MLM
                                        12.1

MILLENNIUM   C P J 9 9 9 N A 1 9 3 3

2.7778 %   3.!

13.8889 %   15.!   WWD   ⚓ WHS
                                        2

M 0 2 8 0 0 3 8 3 1

33.7.01

## DURATION OF COVER

This policy attaches 1ˢᵗ July 2001 and continues until 30ᵗʰ June 2002 both days inclusive and pays all losses occurring during this period. Losses occurring in transit shall be deemed to occur on the date of despatch.

## PROPERTY INSURED

This policy covers valuables defined as "Stock" including other people's goods, including jewellery, diamonds, precious stones of any sort whatsoever, gold or silver or ornaments or plates, pearls and/or merchandise and material usual to the conduct of the Assured's business, cash, banknotes or script, cheques and drafts, the proceeds of the sale of the stock or otherwise, whether the same be the property of the Assured or entrusted to him or them on sale or return or on approbation or for work to be done thereon or for safe custody or for any other purpose whatsoever, and other interest incidental to Assured's business.

The valuables hereon are covered from the time the Assured acquires an interest therein, and this insurance continues until that interest ceases, but in respect of sendings, cover continues until delivered to the premises of the party for whom they are intended or until the interest of the Assured ceases, whichever is the later.

## SITUATION

The valuables insured hereon are covered whilst anywhere in the world in transit or at rest.

## RISKS COVERED

This insurance covers all risks of physical loss of or damage to the insured valuables from whatever cause arising. Subject to the terms, conditions and exclusions of this Policy.

## EXCLUSIONS

This poli    s not cover:

    physical loss or damage by theft or dishonesty or dishonest deception committed by

    (a) any servant or traveller or messenger in the exclusive employment of the Assured (except when conveying property insured to the Post) or

    (b) any customer or broker or broker's customer or agent in respect of property entrusted to them by the Assured, his or their servants or agents

    unless such physical loss or damage    when such property is deposited for safe custody by the Assured, his or their servants or agents, with such    customer or broker's customer or agent

II.    Loss or damage directly or indirectly occasioned by, happening through    war, invasion, hostilities, acts of foreign enemy, civil war, revolution, rebellion, insurrection    rped power, hereinafter called "War Risks" but it is agreed that in respect of valuables in transit    st or sea, this Policy shall include War Risks, subject to the terms and conditions of the appropriate institute War Clauses attached hereto and Confiscation and Expropriation subject to the terms and conditions of the wording attached hereto.

III.    Loss or damage to property insured which may be sustained whilst the same is being actually worked upon and directly resulting therefrom.

IV.    Loss or damage (including loss or damage by fire or theft), directly or indirectly resulting from typhoon, hurricane, cyclone, volcanic eruption, earthquake, subterranean fire or other convulsion or nature (this exception applies only to the risks on land).

V.          Goods missing at stocktaking in respect of which no claim has been previously notified, unless the loss is proved by the Assured to be due to a peril covered by this Insurance.

VI          Unexplained loss and mysterious disappearance.

VII.        Theft or disappearance of or from road vehicles of every description owned by or under the control of the Assured and/or his or their servants or agents or representatives unless at the time of loss or damage the Assured or his servant or agent or representative is actually in or upon such vehicle.

VIII.       Loss of or damage to property occurring through the operation of a peril against which, at the date of the happening of such loss or damage, the Assured, has effected separate insurance irrespective of whether or not such other insurance is liable to or does meet such loss.

IX.         Loss, destruction or damage directly occasioned by pressure waves caused by aircraft and other aerial devices travelling at sonic or supersonic speeds.

X.          The value of or the cost of reconstructing computer system software or data.

XI.         Loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss.

            Any legal liability of whatsoever nature directly or indirectly caused by or contributed to, by or arising from –

    i)      Ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

    ii)     The radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

XII.        Loss or damage directly or indirectly caused by or resulting from wear and tear, gradual deterioration, inherent vice, latent defect, corrosion, rust, dampness of atmosphere, freezing or extremes of temperature, moth, vermin, insects, animals or insufficient or defective packing.

## CANCELLATION

The War and Confiscation and Expropriation Risks cover provided by this policy shall be subject to seven (7) days notice of cancellation, and riots, strikes and civil commotion risks (as defined in the Institute Clauses) in respect of external sendings from each country shall be subject to seven (7) days notice of cancellation but sendings to and from the United States of America, strike risks are subject to forty-eight (48) hours notice of cancellation for risks that have not attached.

Otherwise 60 days notice at any time.

## METHODS OF SENDING

Sendings to be made by:

1.          Registered Airmail.

2.          Airfreight shipped as valuable cargo with not less than 20% of insured value or £5,000 whichever is the greater to be declared to the airline and valuation charge paid thereon or as may be agreed from time to time.

3.          Personal conveyance.

4.          Airfreight despatched and controlled by professional security carriers.

5.          Professional security carriers.

Sendings by other methods are held covered at rates to be agreed.

**BASIS OF VALUATION**

In the event of loss or damage the basis of settlement shall be:

The Assured's liability or the approval price in respect of goods entrusted to the Assured.

a)          The selling price in respect of goods sold but not delivered.

b)          Overseas trips the cost price, with the addition of 10% or cost price plus local taxes and/or duties, whichever the greater.

c)          Otherwise, the cost price, with the addition of 30%.

**LIMITS (Each and every loss or series of losses arising out of the same event)**

**Premises**

-       £2,000,000          Any One Loss at Selfridges.

-       £3,000,000          Any One Loss at Harvey Nichols.

-       £10,000,000          Any One Loss at 24/25 New Bond Street.

-       £10,000,000          Any One Loss at 180 New Bond Street.

Agreed to increase by £1,000,000 at any location for short periods (except 180 and 24/25 New Bond Street).

Agreed to increase by £10,000,000 at 24/25 or 180 New Bond Street for short periods prior to and after shipping and or exhibitions.

**Sending or Conveyance**

| | |
|---|---|
| Registered Post | £50,000 |
| Data Post | £50,000 |
| Fed-Ex and/or UPS and/or similar overnight courier service (USA only) | £10,000 any one package |
| "Courier" Courier service | £5,000 any one package |
| Ferrari Techran and/or Valimpex | £500,000 |
| Brinks, Malca Amit or Regency Security | £20,000,000 |
| By any duly authorised member of staff or others | £500,000 |
| Increased to (with respect of single items or suites) | £1,000,000 |
| By any two duly authorised members of staff | £2,000,000 |
| McCabe / Chalmers / Walton | £1,000,000 |

| | |
|---|---|
| R Trumbo | £500,000/£1,000,000 (as above) |
| J F Ducas | £500,000/£1,000,000 (as above) |
| R Fawcett | £500,000/£1,000,000 (as above) |
| OLD (Okuniev Rami) | £4,000,000 |
| D Morris, Mrs S Morris:}<br>J Morris, I Rose, G Wooton} | £5,000,000 |
| Increased to<br>(when accompanied by one other authorised person) | £10,000,000 |

**Others**

| | |
|---|---|
| Out Workers | £100,000 |
| Aurelia (PR Agency) | £500,000 |
| Hudson Wright | £1,000,000 |
| Supatana Atorn-Phati (PR Agency, Thailand) | £500,000 |
| Occasions PR and Marketing (Hong Kong) | £500,000 |
| Exhibitions | £20,000,000 |

*pic picture as £5m*

## ENTRUSTMENTS TO THIRD PARTIES

£2,000,000 any one Entrustee subject to the Entrustee signing an approbation/memo note which makes them responsible for the insured interest.

£1,500,000 any one third party in respect of pri____ ___ni/celebrities and the like. Receipts are to be signed and recovery rights are to be maintained but it is noted agreed that these third parties do not sign approbation/memo notes.

## WAIVER OF RECOURSE

It is agreed that Underwriters waive their rights of recourse against:

Banks, Security Companies, Christies, Sotherbys and Out Workers.

<u>BUT</u> only to the extent that the Assured has agreed to release such organisations from liability.

## DEDUCTIBLE

This policy is subject to a deductible of £40,000 or US$50,000 each and every loss or series of losses arising out of the same event. But £10,000 or US$15,000 in respect losses from Selfridges or Harvey Nichols. <u>BUT</u> no deductible in respect of sendings (other than Personal Conveyances where the deductible shall apply).

## JURISDICTION –

This Policy is subject to English Jurisdiction.

## OTHER CONDITIONS

It is a condition of this policy that:

1.   If the Assured shall make claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Insurance shall become void and all claims hereunder shall be forfeited.

2.   The Assured shall:

    (i)   Maintain and keep detailed records of all:-

        Purchases, sales and other related transactions including purchases and sales invoices

        Customers goods and goods of others in the jewellery trade; stock away from the premises, which shall be listed separately;

    (ii)   Maintain and keep all jewellers' memoranda and consignment agreements;

    (iii)   Take and record dated physical count inventories at not more than 12 (twelve) months intervals.

    The records and documents required shall be kept and maintained so that the underwriters and/or their designated representatives can accurately determine therefrom for each item, ownership acquisition date, the Assured's cost price, that sale price and date of sale, the estimated value of customer goods, the value of goods of others in the jewellery trade and the exact amount of any loss or damage without reference to the personal knowledge of the Assured or others and without reference to accounting calculations based upon information or materials other than a combination of the records required.

3.   In the event of any loss of or damage to the insured property or occurrence which may give rise to a claim under this policy the Assured shall give immediate notice to the Underwriters.

4.   Protection Maintenance Clause
    It is agreed that the whole of the protections provided for the safety of the insured property shall be maintained in good order throughout the currency of this Policy and shall be in use at all times out of business hours or when the Assured's premises are left unattended, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Underwriters without their consent, as within the cont----- of the Assured.

## 5.   HOTEL/MOTEL CLAUSE

In respect of stay risks, this policy only covers the insured interest w------ the hand or sight of the Assured and /or Assured's Employee(s) and/or Representative(s) or when deposited i-- ----- bank safe deposit vaul--- or in the main safe of a hotel or motel and/or whilst in custody of customs. For the purpose of this -- covers --- respec--- f the insured interest whilst in a safe in a Hotel/Motel room will only be operative when t--- --- ------ ---- --- --g all losses from unattended Hotel /Motel rooms.

## 7.   PERSONAL CONVEYANCE CLAUSE

    This policy only covers the insured interest in transit whe--- , the "close personal custody and control" of an individual designated in this policy and subject to the in--- idual limitations as specified in the schedule attached. For the purpose of this clause "close personal custod--- and control" means that the insured interest shall be held by, or attached to, or wit--- in sight and an arms l---gth reach of the designated individual at all time whilst in transit, subject to the policy's Hotel/Motel Cla--se. A negligent or voluntary relinquishment of "close personal custody and control"------ the insured in---est by the designated individual will not constitute a loss for the purpose of recovery h---------- ----- w--- result in an immediate cessation of coverage, subject to the policy's Hotel/Motel Clause.

8.   **EXHIBITION CLAUSE**

This endorsement shall apply to all exhibitions outside the insured premises, whereat the Assured displays insured property.

It is a **condition precedent** to coverage under this policy that the Assured comply with all of the terms and conditions of this endorsement. If the Assured violates any of the terms and conditions of this endorsement, the Assured's right of recovery hereunder shall be entirely void and no claim will be paid.

1.   At all times whilst the property of the Assured (and/or property for which the Assured is responsible) is not being displayed and/or prior to or after exhibition hours:

a)   The property shall be kept in a locked vault or security room within the exhibition hall (said security room shall be previously approved by the show organiser).

Or alternatively,

b)   If the Assured removes the property from the exhibition hall, it must be deposited in either a banks deposit vault, the safe of a firm in the jewellery trade or the main safe of a hotel/motel.

2.   It is understood and agreed that there will be coverage for property of the Assured (and/or property for which the Assured is responsible) display at an exhibition only if, at the time such physical loss or damage occurs, either:

a)   The property was displayed in a showcase(s) that was (were) locked with the key(s) removed;

Or

b)   The property was being shown to a customer by the Assured or by an officer/employee of the Assured who, at all times, maintained physical contact or visual sight of the property;

Or

c)   The property was being placed in, removed from or arranged within the showcase(s) by the assured or by an officer/employee of the Assured who, at all times, maintained physical contact or visual sight of the property

9.   **PRIVATE DWELLING HOUSE CLAUSE**

It is agreed and understood between parties that whenever any insured goods are taken home by the Assured and/or his representatives, these goods have to remain under the personal and permanent supervision of an adult person and/or to be locked in safe at private dwelling house.

10.   **LOCKED SHOWCASE CLAUSE**
      (Applicable to Assureds Retail Premises)

This insurance excludes loss of or damage to property displayed in a showcase(s) unless at the time such loss or damage occurs, either:

a)   The showcase(s) was (were) locked and the key(s) removed.

Or

b)   The showcase was open and attended by and within the sight and control of the Assured or an officer/employee of the Assured or a person named and identified in the policy as an agent of the Assured for the purpose of placing in, removing or arranging or showing to a customer stock covered under the terms of the policy.

11.    **INVALID PAYMENTS EXCLUSION CLAUSE**

Notwithstanding anything contained herein to the contrary, this policy excludes any claim in respect of the property insured, where the loss has been sustained by the Assured consequent upon handing over such insured property to any third party against payment by:

a)    Cheque, Banker's Draft, or any other form of Money Order, where such Cheque, banker's Draft or other form of Money Order, shall prove to be false, fraudulent or otherwise invalid or uncollectable for any reason whatsoever.

b)    Cash, currency or Bank Notes, which prove to be, counterfeit, false or otherwise invalid for any reason whatsoever.

c)    Credit Card, where the use of the same has been false, fraudulent or invalid, or when payment of the amount due is uncollectable for any reason whatsoever.

12.    In case of loss of or damage to property of others entrusted or delivered to the Assured for which claim is made hereunder.

The underwriter shall have the right, at their sole opinion to adjust such loss or damage with:
  (i)    the owners of the property or

  (ii)    The Assured, who will assume all responsibility to the owner of the property and release, in writing, the Underwriters of all responsibility to the owner.

(a)    the Assured agrees that:-

  (i)    the signature of the owner of the property on a release or receipt as required by the underwriters in satisfaction of settlement by the underwriter shall fully satisfy any claim of the Assured for the loss of or damage to property of others;

  (ii)    Should the Assured receive payment from the Underwriters for the loss of or damage to property of others the Assured will release the underwriters of any responsibility to the owner of the property and hold the underwriters harmless from any claims brought by the owner.

(b)    The owners of such property are not insured or Assured's under this policy nor are un_____d beneficiaries of this policy. This insurance is only for the Assured's bene__, and this Condition 3 only refers to the Assured's risk for loss or damage to propert__ __others.

13.    In the event that any legal proceedings are taken to enforce a claim against the Assured in respect of any loss of or damage to the property of others which is insured under this policy, the Underwriters reserve the right at their sole option, without c_____ the Assured to conduct and control the defence on behalf of and in the name of the Assured. No __ __acti__ of the Underwriters shall increase the liability of the Underwriters under this policy nor increase the limits of liability specified in the schedule.

14.    In case of any loss or damage of any kind whatsoever, it shall be lawful and necessary for the Assured, the Assured's factors, servants or assigns to sue, labour and travel for, in and out the defence, safeguard and recovery of the insured property or any part therefore without prejudice to this Insurance or waiver of the Assured's rights hereunder. No act or acts of the Assured, the Underwriters or their representatives in recovering, saving or preserving the insured property in case of loss or damage shall be considered a wavier or an acceptance of abandonment. Any expenses so incurred shall be borne by the Assured and the Underwriters in proportion of their respective interests.

15.    No individual shall be a beneficiary under this policy, except insofar as the individual is an owner, director, officer or partner of the Assured named in the Proposal form and while acting in a capacity as such.

16.    This insurance shall in no way inure directly or indirectly to the benefit of any carrier or other bailee.

17.    There shall be no abandonment to the Underwriters of any of the insured property.

18.    In case of loss or damage it is understood and agreed that should the Assured acquire any right of action against any party for loss of or damage to the insured property, the Assured will assign and transfer such right of action to the underwriters and execute and deliver the customary form of subrogation agreement or loan receipt and will assign to and surrogate the Underwriter to, or will hold in trusts for the Underwriter, all rights and demands of every kind, respecting the same, to the extent of the amount paid or advanced, and will permit suit to be brought in the Assured's name at the expenses of the Underwriters. The assured agrees to co-operate fully in the prosecution of any such suit and will appear in court or otherwise at the demand of the Underwriters and at the Underwriter's request appoint the Underwriters as the Assured's attorney in fact for the purpose of pursuing any right of recovery.

## 29.    PROFIT SHARING COMMISSION

It is agreed that on expiry and renewal with the same Underwriters:

1.    From the gross premium paid shall be deducted all claims paid or outstanding.

2.    10% of the credit balance will be allowed as a profit commission hereunder.

3.    There shall be no profit commission if the credit balance does not exceed 30% of the gross premium.

4.    If at some later date claims are settled hereunder the profit commission will be re-adjusted.

5.    When there is a deficit balance in any policy year, the amount of the deficit arrived at in accordance with the foregoing provisions shall be carried forward and set off against the resulting figures for the following two policy years. After that any outstanding balance will be cancelled and profit commission will be computed in the normal manner.

## 20.    SPECIAL EXTENSION – FIDELITY

Notwithstanding Exclusion I of this policy and subject otherwise to the General Conditions and Exclusions contained in the Certificate cover hereunder is extended to include Loss through any act or acts of fraud or dishonesty committed by an Employee as hereinafter defined.

### COVER

Underwriters will indemnify the Assured up to the Sum Insured stated in respect of all physical loss or damage of Property Insured which the Assured shall sustain resulting, directly from one or more fraudulent or dishonest acts committed by an Employee, acting alone or in collusion with others,

**PROVIDED ALWAYS THAT: -**

1)    Such fraudulent or dishonest acts: -

(a)    Are committed during the Period of Insurance and

(b)    Are discovered during the Period of Insurance or no later than 12 months following a) the termination or expiration of this Extension or b) the death, retirement, resignation or dismissal of a defaulting Employee

### SUM INSURED

GBP1,000,000 any one loss and in all.

Deductible As Per Policy Wording

## EXCLUSIONS

This Extension does not cover : -

A      Loss, or that part of any loss, as the case may be, the proof of which, whether as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation alone.

B.      Any Employee from and after the time that the Assured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employee has committed any dishonest or fraudulent act whether such act be committed before or after the date of employment by the Assured.

## DEFINITION

**Employee** shall mean any person

A)      Under a contract of service or apprenticeship with the insured or
B)      Undergoing training under any Government approved training scheme under the control of the Insured

In connection with the business

The term Employee shall include any director of the insured if such person

A)      is also empl    d by the Insured under a contract of service and
B)      con       m.    an 5% of the issued share capital of the Insured company or of any subidiary of the Insured
               an;.
C)      It is agree   hat    srs. Trumbo, Ducas, Fawcett, McCabe, Chalmers, Walton and Okuniev Rami, shall be
        con            ~s for the purposes of this policy.

## MEMORANDUM

If a loss is alleged to have been caused by the fraud or dish    ~sty or any one or more of the Employees and the Assured shall be unable to designate the specified Employee or  mployees causing such loss, the Assure    nevertheless have the benefit of this Extension, subject to the provisions   this Extension and the policy, pro    the evidence submitted proves beyond reasonable doubt that the loss was due   he fraud or dishonest; or on     of the said Employees, and provided further that the liability of Underwriters for     loss shall no         ar 5  n Insured hereunder.

## SPECIAL CONDITIONS

1.      The Special Conditions of this Extension shall be additional to the General Conditio   and Exclusions appearing in the policy to which this Extension attaches save and except where they or any of the conditions of this Extension shall vary or otherwise conflict with any of the said General Conditions and Exclusions in which case and to the extent only of such variation or conflict these conditions shall prevail.

2.      Immediately upon discovery of any act or acts of fraud or dishonesty by any Employee or of reasonable cause for suspicion of such act or of any want of integrity on the part of any Employee, whether giving rise to a claim under this Extension or not, the Assured shall give written notice thereof to the Underwriters and thereupon the Underwriters shall be relieved of all liability in respect of any subsequent acts of such employee.

21.     **SPECIAL EXTENSION – PERSONAL JEWELLERY**

        It is agreed that this policy is extended to cover Personal Jewellery as per list filed in the offices of Heath Lambert Group and this policy deductible shall not apply to this schedule.

**22.**   **SPECIAL EXTENSION**

Terrorism

NMA 2551 (4 393).

It is agreed that risks of United Kingdom Terrorism are included hereunder subject        to a limit of GBP 10,000,000 any one loss and in the aggregate during the annual Policy period.

**Deductible:**        GBP 15,000 each and every loss.

Re-instatement of coverage held covered at additional premium to be arranged.

**23.**   **PREMIUM PAYMENT**

As agreed.

**24.**   **SCHEDULE OF ASSURED'S**

David Morris International Ltd
and/or any other Subsidiary or Associated Company or Partnership of any of the above which is now or may be constituted.

**25.**   **CONFISCATION and EXPROPRIATION WORDING**
Although a Policy may be signed including the wording as below claims are to be paid as if a separate Policy on a Lloyd's J.A. form had been signed in respect of such risks.

1.  (a)This Policy is to cover loss of and/or damage to the property hereby insured directly caused by confiscation, seizure, appropriation, expropriation, requisition for title or use or wilful destruction by/or under the order of the Government (whether civil, military or de facto) and/or public or local authority of the country or place in which the vessel(s)/craft/ property hereby insured are covered by the terms of this Policy.

(h) Nevertheless this Policy does not . . .       . . h loss or damage by or under the order of the Government and/or public or local authority of the country or      . h.

(c) In respect of such prope:    as may he insured    reunder where limitation or exclusion of war coverage is made by the appropriate Institu . : W . .       . . limitation or exclusion of war coverage shall also apply to this extension.

2.

(a) No claim to attach hereto for any loss arising from any debt, fail . . to provide bond or security, or any other financial cause, whether under court order or otherwise.

(b) No claim to attach hereto for any loss arising from the repossession of proper:, by any titleholder, or arising out of any contractual agreement to which any Assured protected under this Policy ma; . . narty.

(c) No claim to attach hereto for delay, deterioration and/or loss of market.

(d) No claim to attach hereto for any loss unless preliminary notification of the occurrence giving n . . . . h loss shall have been advised in writing to Underwriters as soon as practicable, and the Assured undert . . . . at all times from the date of such preliminary notification they will do and concur in doing all thing r . . . bly practicable to avoid or diminish the loss and to recover the whole of the property insured by this Policy.

3.  (a)Warranted that the Assured comply in all aspects with the laws (local or otherwise) of any country within whose jurisdiction the property is likely to be in the normal course of events.

(b) Warranted all permits necessary for normal legal operations are obtained.

Should failure to comply with the above warranties prejudice this insurance to the extent of a loss, no liability shall attach hereunder.

4.  In the event of any claim hereunder, the Assured undertake to subrogate to Underwriters the right of procedure against any other parties for the recovery of, or in respect of, the said property.

5.  This Insurance does not cover any loss or damage which at the time of the happening of such loss or damage is insured by or would, but for the existence of this Policy, be insured by any other existing policy or policies except in respect of any excess beyond the amount which would have been payable under such other policy or policies has this Insurance not been effected.

6.  Underwriters subscribing to this Insurance hereby agree that if a new Government is installed in any place and after becoming the recognised or de facto Government of the place proceeded to confiscate or expropriate property by Government action by decree or other legislation or otherwise they would settle a loss if it fell under the terms of the Policy wording of this Insurance.
Underwriters subscribing hereto acknowledge and accept that the Government might have been 'installed' by force or armed revolt.

Interested Insurers per
Heath Lambert Group Limited
Friary Court
Crutched Friars
London EC3N 2NP

Our Ref: TT974/1201/MD/CH
Your Ref: R. Simmons

25th February 2002

### FINAL REPORT ON THEFT CLAIM

CERTIFICATE NUMBER:                    INSTRUCTING OFFICE REF:

Not advised                            Not advised

NAME AND ADDRESS OF ASSURED:           David Morris International Limited
                                       and/or for whom they have
                                       instructions or authority to insure
                                       180 New Bond Street
                                       London W1S 4RL

LOCATION OF LOSS:                      180 New Bond Street
                                       London
                                       W1S 4RL

BUSINESS:                              Retail jewellers

VAT STATUS OF ASSURED:                 Taxable

TIME, DAY AND DATE OF LOSS:            Approximately 11.15 am Saturday,
                                       29th December 2001

NATURE AND EXTENT OF LOSS:             Diamond necklace, rings and diamond
                                       bracelet watch

WARRANTIES/LIMITS:                     None applicable

POLICE:                                Notified to West End Central police and
                                       Flying Squad – see report

AMOUNT OF CLAIM:                       As adjustment

ADJUSTMENT:                            $2,498,807.38 and £50,245.58
                                       (net of $50,000 deductible)

| ITEM: | INTEREST: | SUM ASSURED: | EXCESS: | ADJUSTED LOSS: |
|---|---|---|---|---|
| - | Stock at 180 New Bond Street | £10m a.o.l. | $50,000 | $2,498,807.38 £    50,245.58 |

Please note our new address from Monday 28ᵗʰ January 2002:
Studio 25, 1 Adler Street, Aldgate, London, E1 1EG

We refer to our preliminary report dated 10th January and further to Underwriters instructions received by e-mail on 16th January, and subsequently we proceeded to verify the claim and agree settlement to conclude the claim.

We now report finally as follows:-

## POLICE AND OTHER ENQUIRIES:

We have been liaising further with Flying Squad officers dealing with this matter as advised in our preliminary report but currently regret to advise no clear progress in arresting the thieves nor recovery of any of the property. The officers concerned have three potential suspects and more detailed enquiries are in hand. The initial DNA analysis obtained from the blood sample and from the discarded McDonalds hamburger left in the escape vehicle, has enabled the police to obtain some 'profiles' which are now in circulation and being extended internationally. In addition, a reconstruction of the event was undertaken for Crimewatch UK and screened on 13th February last. Although there have been a number of calls from the public, these are still being investigated further but we understand none have firmly identified either of the two criminals involved.

The case continues to receive active consideration by the Flying Squad officers and we shall of course advise Underwriters immediately there are any developments, particularly in the event of a potential recovery.

## CLAIM AND ADJUSTMENT:

The Assured provided us with copies of their computerised stock book records from the outset, showing the cost price of the stones and the cost of labour and materials in the manufacture of the rings and necklace etc. The former was calculated exclusively in US Dollars and totalled $1,960,621.28 and the latter totalled £38,650.45.

We carried out an audit of the amounts from the supporting documentation, extrapolating from copies of the original invoices, together with a sample of the internal time sheets of the self-employed cutters, polishers etc, working on the Assured's premises, all the amounts which effectively verified the accuracy of the computer records. Thus we were able to confirm that the historic cost price in US Dollars of the diamonds in the necklace, seven rings and the watch (which latter included the watch mount and gold bracelet) as follows:-

| Stock ref: | Description | Principal stones | Secondary stones | Total |
|---|---|---|---|---|
| 738 | Necklace | 372,544.80(13) | 257,131.53(68) | 629,676.33 |
| 849 | Ring | 111,500.00 | 2,459.99 | 113,959.99 |
| 307 | Ring | 51,849.03 | 1,202.00 | 53,051.03 |
| 037 | Ring | 319,000.00 | 16,335.76 | 335,335.78 |
| 469 | Ring | 136,004.00 | 7,395.34 | 143,399.34 |
| 284 | Ring | 35,611.49 | 103.00 | 35,714.49 |
| 002 | Ring | 256,000.00 | 1,324.87 | 257,324.87 |
| 365 | Ring | 374,400.00 | 659.45 | 375,059.45 |
| 359 | Watch* | 11,600.00 | 5,500.00 | 17,100.00 |
| | | | | $1,960,621.28 |

* includes white gold bracelet and DM watch mount

far as the necklace was concerned, this piece had been made up by the Assured following their purchase of an old diamond necklace from Gemcut S.A. of Geneva on 9th July 2000 for $325,000. This necklace had contained 10 pear shape stones and 54 other diamonds. The Assured purchased 3 more pear shape stones for a total of $47,544.80 together with 14 further diamonds to add to the original 54 stones at a cost of $333,905.25. However, this was $8,905.25 more than shown on the computerised stock book record as the cost price of the stones had been offset by 3 diamonds included on the computer stock record at nil cost. Thus, the total cost of the 13 pear shape diamonds was $372,544.80 and the cost of the 68 smaller diamonds $257,131.53, producing the accurate total, therefore, of $629,676.33.

The ring, stock reference 284, comprised a 4.02 ct stone, recorded on the computer stock book record at $8,858.58 per carat, i.e. $35,611.49. This did not relate to the purchase invoice as this was one of 6 stones purchased for a total of $172,550 for 20.51 cts, i.e. $8,563.27 per carat. We ascertained, however, that the difference of $1,187.15 comprised the cost of the GIA certificate at $336.50 but, nevertheless, was still $850.65 more than the cost price. This arose because the Assured re-valued this 4.02 ct stone at $8,775 per carat, i.e. $850.65 more, as it transpired on receipt to be a better quality stone than the others purchased in the parcel for $172,550.

Similarly, stock reference 307, another ring with a 4.04 ct stone was another of the 6 stones purchased in this parcel for $34,595.61, but entered into the stock book records at $50,681, an increase of $16,085. This stone had also been re-valued but, after it had been re-cut and polished which reduced its weight. In fact, five of the six stones had been re-cut and ascribed different values, but the increased values were to a large degree offset by one stone which was re-valued downward significantly to $5,785 per carat from $8,563.27 per carat and furthermore the total weight of all six stones after re-cutting had been reduced from 20.15 to 19.2 cts in total. Thus, the overall difference was marginal and the computerised stock book record, therefore, reflected the current cost price of these two stones immediately after purchase, since the historic cost price had changed as a result of re-cutting. It was agreed therefore that the historic invoice cost was not correct in terms of representing the Assured's cost price. The subsequent computerised stock book record showing the revised and, therefore, current cost price after purchase was an accurate cost price in terms of applying the basis of settlement under the policy.

This nevertheless highlights the need for the Assured to allow for their cost price to reflect the current cost price at the time of purchase as opposed to the historic cost price — which position can be of much more significant consequence where the Assured have purchased either an uncut stone or have re-cut/polished another large stone purchased advantageously, with the result that they have considerably enhanced its value.

The cost price of the stones for the David Morris diamond set watch incorporated the white gold bracelet and the watch mount and has been included within this category as the watch and bracelet is supplied made up by Bosman Joaillerie of Paris. Their invoice of 17th November 2000 evidenced the costs of the diamond set bracelet at $11,800 and the diamond set watch mount at $5,500.

The invoices for the stones in the other rings not referred to above were all verified precisely, there being no arithmetical errors.

Accordingly, we agreed the total cost price of the diamonds at $1,960,621.28.

Insofar as the costs of labour and materials were concerned, again from an analysis of invoices from outworkers and self-employed staff working at the Assured's premises we verified the total costs broken down as follows for each item:-

| Stock | Desc. | Metal | Cut | Polish | Mount | Setting | Overhead | Total |
|-------|-------|-------|-----|--------|-------|---------|----------|-------|
| 758 | Necklace | 1177.50 | 45.00 | 600.00 | 6340.76 | 2865.94 | 11365.75 | 22294.95 |
| 349 | Ring | 159.00 | 25.00 | 25.00 | 528.24 | 80.00 | 854.32 | 1672.56 |
| 307 | Ring | 144.00 | - | - | 615.30 | 130.00 | 966.79 | 1856.10 |
| 037 | Ring | 256.00 | 300.00 | 50.00 | 1040.00 | 310.00 | 850.00 | 2806.00 |
| 469 | Ring | 102.00 | - | 25.00 | 495.63 | 70.00 | 560.44 | 1253.07 |
| 284 | Ring | 340.00 | - | 25.00 | 1390.63 | 148.00 | 1917.72 | 3821.35 |
| 002 | Ring | 90.00 | - | 45.00 | 855.95 | 756.00 | 1624.47 | 3371.42 |
| 365 | Ring | 118.00 | - | 32.50 | 500.00 | 196.00 | 728.50 | 1575.00 |
| | | | | | | | | 38650.45 |

The overhead costs are calculated at 50% of the labour cost for work done by self-employed polisher, setters, cutters etc., who work in the Assured's own workshop and is calculated to reflect a proportion of the overheads of running the workshop in terms of space, heat, electricity etc, those self-employed workers invoices for each job being discounted to reflect the facilities available to them. Insofar as those craftsmen employed directly by the Assured, primarily the mounters/designers, the labour cost is calculated at an hourly rate and the overhead cost similarly but separately calculated at an hourly rate. This accounting function reasonably reflects the total cost price to the Assured for the work being undertaken at their own premises and would be comparable to the cost of sub-contracting the work to outworkers entirely, which cost would necessarily incorporate a profit margin. Clearly, as can be seen, the major item concerned the necklace which involved de-mounting the old original necklace from which it was largely formed and re-making/designing 81 individual mounts to set each stone, which together with the metal, cutting, polishing and setting to include the overhead cost averaged £275.24 per stone.

In any event, we were satisfied that all costs entered into the Assured's stock book computer records for labour and materials were accurate from the internal documentation available, apart from a few cases where incorrect figures had been input into the computer but which resulted in inconsequential differences amounting to a few pence

Accordingly, we were satisfied that the total labour and materials costs were accurate at the sum of **£38, 650.45**.

Calculation of settlement:

The policy provides for the cost price, with an uplift of 30% and with a deductible of £40,000 or $50,000. In respect of the latter, whereas it was in fact more equitable for 50% of the Dollar deductible to be applied to the Dollar costs and 50% of the Sterling deductible to be applied to the Sterling costs, the Assured elected to have the Dollar deductible applied to the Dollar settlement in full. Due to the difference in exchange rates at present, this was marginally disadvantageous to the Assured, but reflected

eir necessity to both replace the stock of diamonds and to pay their partners in the stones in Dollars.

As a consequence, settlement of the claim was agreed as follows :-

1.    US Dollar cost of diamonds:

| Total cost price | 30% uplift | Total |
|---|---|---|
| $1,960,621.28 | $588,186.30 | $2,548,807.38 |
| less deductible at US$50,000 | | 50,000.00 |
| | | **$2,498,807.38** |

2.    Sterling cost of labour and materials:

| Cost | 30% uplift | Total |
|---|---|---|
| £38,650.45 | £11,595.13 | **£50,245.58** |

At current exchange rates of approximately $1.41, we calculate the total settlement in Sterling to be approximately £1,822,450.

RECOMMENDATIONS FOR PAYMENT:

Settlement of this claim has been agreed in accordance with Underwriters' instructions and, following verification of the amounts, in the sums of $2,498,807.38 and £50,245.58. A signed Form of Acceptance was forwarded to Messrs Heath Lambert by facsimile on 23rd January 2002 and, we understand, that payment has now been made to the Assured.

Additionally, we have received full settlement of our own fee and expenses for which we are obliged and, pending any developments by police and, more particularly, a recovery of any of the property, we are now closing our file, although obviously in the latter event, we shall advise Underwriters immediately.

Finally, we attach hereto the original signed Form of Acceptance, with attached schedule and payment authority for Insurers' records.

Mark Dalrymple
TYLER & COMPANY



TYLER & C

CHARTERED LOSS ADJUSTERS

Our Ref : TT3T41201MD.CH

To Interested Insurers per
Heath Lambert Group Limited



FORM OF ACCEPTANCE
DAVID MORRIS INTERNATIONAL LIMITED – POLICY NO. NA3471501

Subject to your approval and to the terms and conditions of the policy we hereby agree to accept the sums of TWO MILLION FOUR HUNDRED AND NINETY EIGHT THOUSAND, EIGHT HUNDRED AND SEVEN U.S. DOLLARS AND THIRTY EIGHT CENTS AND FIFTY THOUSAND, TWO HUNDRED AND FORTY FIVE POUNDS, FIFTY EIGHT PENCE in full satisfaction and discharge of all claims under the above policy occasioned by and consequent upon theft of diamond necklace, six diamond rings and diamond mounted watch, in accordance with the attached schedule, which occurred from 180 New Bond Street, London SW1S 4RL, on or about Saturday, 29th December 2001.

We agree that upon payment of the said sum by the Interested Insurers they will become subrogated to all our title, rights and interests in the items subject of the attached schedule and in any damages or monies recoverable in respect thereof in respect of salvage or otherwise howsoever.

We hereby authorise the Interested Insurers to use our name for the purpose of any claim, legal proceedings or other measures in respect of the said loss or for the recovery of any damages or monies relating thereto.

We undertake to do and concur in doing all such acts and things as may be required for the purpose of enforcing any rights or remedies or of obtaining relief or indemnity in respect of such loss, the Underwriters at Lloyd's undertaking to indemnify us against all costs and expenses in respect thereof.

We declare that there are no other insurances effected on the said property by us or by any other person except as above mentioned.

$2,498,807.38
and
£50,245.58

Signed

For and on behalf of
David Morris International Limited and/or for whom they insure
24-25 New Bond Street
London W1Y 3HD

Date

T

## SCHEDULE OF STOLEN JEWELLERY AND WATCH
## ATTACHING TO FORM OF ACCEPTANCE

COST PRICE

| Stock No. | Description | Sterling | US Dollars |
|---|---|---|---|
| 10-01-793 | Platinum 2-row necklace with 13 pear-shaped diamonds and 68 round diamonds | £22,950.79 | $ 629,676.33 |
| 11-21-849 | Platinum ring with 6.21ct emerald cut diamond | £ 1,672.56 | $ 113,959.99 |
| 11-31-307 | Platinum ring with 4.04ct emerald cut diamond | £ 1,856.10 | $ 53,051.03 |
| 11-31-037 | Platinum ring with 9.05ct oval diamond | £ 2,806.00 | $ 335,335.78 |
| 11-11-469 | 18ct gold ring with 5.62ct pear-shaped diamond | £ 1,253.07 | $ 143,399.34 |
| 11-31-284 | Platinum signet ring with 4.02ct emerald cut diamond | £ 3,821.35 | $ 35,714.49 |
| 11-31-002 | Platinum ring with 10.07ct diamond | £ 3,371.42 | $ 257,324.87 |
| 11-31-365 | Platinum ring with yellow Asscher cut 7.2ct diamond | £ 1,575.00 | $ 375,059.45 |
| 12-14-359 | Diamond set David Morris watch on diamond set white gold bracelet | | $ 17,100.00 |
| | | £38,650.45 | $1,960,621.28 |

DAVID MORRIS INTERNATIONAL

ROBBERY - NEW BOND STREET 29/12/2001

STOCK DETAILS

| NUMBER | BRIEF DESCRIPTION | COST POUNDS | COST US DOLLARS | PARTNER SHARE US DOLLARS | RETAIL POUNDS |
|---|---|---|---|---|---|
| | PEAR SHAPED DIAMOND NECKLACE | 22,294.95 | 629,676.33 | 133,562.10 THREEM | 1,325,000.00 |
| | EMERALD CUT DIAMOND 6.21CT RING | 1,672.56 | 113,959.99 | 55,750.00 THREE MILLION | |
| | EMERALD CUT DIAMOND 4.04CT RING | 1,856.10 | 53,051.03 | 5,033.09 OLD | |
| | OVAL DIAMOND 9.05CT RING | 2,806.00 | 335,335.78 | 156,500.00 THREE MILLION | |
| | PEAR SHAPED DIAMOND 5.62CT RING | 1,253.07 | 143,399.34 | | |
| | SQUARE EMERALD CUT DIAMOND 4.02CT RING | 3,821.35 | 35,714.49 | 3,456.88 OLD | |
| | EMERALD CUT DIAMOND 10.07CT RING | 3,371.42 | 257,324.87 | 127,989.99 THREE MILLION | |
| | ASSCHER CUT DIAMOND 7.02CT RING | 1,575.00 | 375,059.45 | 149,200.00 OLD | |
| | DIAMOND SET BRACELET WATCH | | 17,100.00 | | |
| TOTALS | | 38,650.45 | 1,960,621.28 | 635,062.06 | 3,841,000.00 |

**GLASSBOROW, Martin**

| | |
|---|---|
| **From:** | GLASSBOROW, Martin |
| **Sent:** | 24 July 2006 09:25 |
| **To:** | 'dalrymple@tylerandco.uk.com' |
| **Cc:** | 'Rebecca Simonds' |
| **Subject:** | RE: David Morris - Recovery of stolen diamond   Your Ref T7974/1201 |

Mark, good morning to you

I refer you to the captioned claim, and confirm this diamond was stolen during the robbery on 29th December 2001, your report dated 10th January 2002 listed this on page 7, the stock reference being 11-21-849, emerald cut diamond 6.21ct ring, value $113,959.99. With the 30% uplift the settlement amount for the ring would have been $148,147.98.

I spoke again to Ivy Cutler at GIA on 19th July, who is keen to see the item returned to it's owner. Her contact number is 001 212 221 5858 ex 3539.

I will call you later to discuss the handling of this

All the best

Martin

-----Original Message-----
From: Stephen Roach [mailto:Stephen.Roach@marlborough.co.uk]
Sent: 19 July 2006 13:40
To: Dalrymple@tylerandco.uk.com
Cc: SIMMONS, Robert; GLASSBOROW, Martin; Les Turner
Subject: David Morris - Recovery of stolen diamond

Mark,

Further to our conversation of the 17th July, concerning the above and apologies for not providing the details sooner.

As discussed, It has been reported that a diamond has been recovered, that may be part of the jewellery stolen from the Bond Street premises on 29th December 2001. Underwriters should be grateful if you could ascertain the current position and report on the recovery prospects. Please refer to attached files showing recovery details.

<<DMI Rec File A.pdf>>   <<DMI Rec File B.pdf>>   <<DMI Rec File C.pdf>>

Please copy response to Broker so that the following market can be kept advised.

Best Regards,

Stephen Roach
Marlborough Underwriting Agency Ltd
Tel. No. 020 7456 1834
Fax No. 020 7456 1850

CONFIDENTIALITY AND DISCLAIMER NOTICE

The information in this e-mail and in any attachments is confidential and may be privileged or otherwise protected from disclosure. It is intended solely for the addressee named above and the contents should not be disclosed to any other person. If you are not the intended recipient and have received it in error please notify the sender immediately by return email and then delete this email and any attachment from your system.

Any views or opinions expressed are solely those of the author and do not represent those of the author's employer or its affiliates, all of which disclaim any and all

recipient or the recipient's system/s, unless otherwise specifically stated.

Email may be susceptible to data corruption, interception and unauthorised amendment as Internet communications are not secure.  We do not accept legal responsibility or liability for any such corruption, interception or amendment or the consequences thereof.

We may monitor the content of emails sent and received via our network for viruses or unauthorised use and for other lawful business purposes.

We advise you to carry out your own virus check before opening any attachment, as we cannot accept liability for any damage sustained as a result of any software viruses or other cause.

Marlborough, Tenecom and BHIIL are Authorised and Regulated by the Financial Services Authority

)

P.01

212713309Z

22-JUN-2006  17:01



# GIA
## GEMOLOGICAL INSTITUTE OF AMERICA®
| Laboratory


23 JUN 2006

New York Headquarters
580 Fifth Avenue Suite 200 | New York NY 10036-47
T: 212-221-5858 | F: 212-575-3095
Carlsbad
5355 Armada Drive | Carlsbad CA 92008-4699
T: 760-603-4500 | F: 760-603-1814
www.gia.edu

# FAX COVER

DATE: 6·22·06

TO: Martin Glassborow

FROM: Ivy Cutler

CC:

RE:

NUMBER OF PAGES
INCLUDING COVER: 3

T: 027 560 3625
F:

T:
F:

☐ URGENT/RESPOND ASAP     ☐ PLEASE REVIEW/COMMENT     ☒ FOR YOUR INFORMATION

Les Turner, Marlborough
7456 1826.  Awards file.

22
6

*Stolen tagged From '02*

# DAVID MORRIS
### INTERNATIONAL LIMITED

4th Floor, 24-25 New Bond Street, London W1S 2RR
Telephone: 020-7495 4857 • Fax: 020-7495 1194

3rd January 2002

Mr Bruce Moriarty
Director of Security
GIA
580 Fifth Avenue
New York
New York 10036
USA

Dear Mr Moriarty

Further to a robbery in our London store on the 30th December 2001, few items of jewellery were stolen.

Please find attached the list of the diamonds with GIA certificates.

We would very much appreciate if you would register these stones on your stolen database.

Detective Inspector Jonboutcher is in charge of the police enquiry.

Mobile no. 00 44 7771 676 398
Telephone no. 00 44 20 8247 7869
Fax no. 00 44 20 8247 7891

*Claim amount: $113,959.99 Plus 30% $341,879*

The police file No : CRIS 64228051 01

Thank you very much for your co-operation.

Yours sincerely,

Nathalie Toullic
**Export Manager**



2001

| Shape | Carat | | Colour/clarity | GIA cert No. | Date of GIA cert. |
|---|---|---|---|---|---|
| Pear shape | 6.60 | ct | F VS2 | 11183943 | 6.14.00 |
| Pear shape | 3.12 | ct | E VS1 | 10545261 | 1.25.99 |
| Pear shape | 3.02 | ct | D VS1 | 11010485 | 01.14.00 |
| Pear shape | 3.02 | ct | E VVS2 | 10624248 | 03.04.99 |
| Pear shape | 2.15 | ct | E IF | 11047911 | 02.17.00 |
| Pear shape | 1.59 | ct | E VS1 | 11117246 | 06.14.00 |
| Pear shape | 1.51 | ct | F IF | 10763334 | 08.06.99 |
| Pear shape | 1.5 | ct | F VS¹ | 11150208 | 05.10.00 |
| Pear shape | 1.13 | ct | D VS2 | 11117285 | 06.12.00 |
| Pear shape | 1.04 | ct | D VS1 | 11018740 | 01.31.00 |
| Pear shape | 1.01 | ct | E IF | 11079504 | 04.03.00 |
| | | | | | |
| Brilliant cut | 1.06 | ct | F I/F | NY121288 | 4 26.77 |
| Brilliant cut | 1.10 | ct | G I/F | NY130043 | 7.06.77 |
| Brilliant cut | 1.16 | ct | F I/F | NY219481 | 1.12.79 |
| Brilliant cut | 1.18 | ct | F I/F | NY118358 | 5.24.77 |
| Brilliant cut | 1.20 | ct | F I/F | LX804405 | 02.26.77 |
| Brilliant cut | 1.42 | ct | F I/F | NY106617 | 9.08.76 |
| Brilliant cut | 1.58 | ct | F I/F | NY124254 | 6.02.77 |
| Brilliant cut | 1.66 | ct | G I/F | NY135977 | 10.28.77 |
| Brilliant cut | 1.01 | ct | G i/F | NY102326 | 4.6.76 |
| Brilliant cut | 1.04 | ct | G I/F | NY128915 | 8.30.77 |
| Brilliant cut | 1.07 | ct | G I/F | NY201690 | 8.31.78 |
| Brilliant cut | 1.10 | ct | H I/F | 5007372 | 3.29.83 |
| Brilliant cut | 1.16 | ct | E I/F | NY131971 | 8.19.77 |
| Brilliant cut | 1.19 | ct | F I/F | NY214192 | 12.15.78 |
| Brilliant cut | 1.21 | ct | F I/F | NY117813 | 1.26.77 |
| Brilliant cut | 1.34 | ct | G I/F | NY125441 | 6.1.77 |
| Brilliant cut | 1.38 | ct | F I/F | NY117723 | 1.17.77 |
| Brilliant cut | 1.49 | ct | G I/F | LX804842 | 3.10.77 |
| Brilliant cut | 1.64 | ct | F I/F | NY100534 | 3.2.76 |
| Brilliant cut | 1.68 | ct | G I/F | NY122161 | 3.30.77 |
| | | | | | |
| Emerald cut | 10.01 | ct | EVVS1 | 11367535 | 12.12.00 |
| Emerald cut | 6.21 | ct | EVVS1 | | 10.16.00 |
| Emerald cut | 7.2 | ct | Natural fancy vivid yellow VVS1 | 11053797 | 03.01.00 |
| Emerald cut | 4.02 | ct | ESI1 | 11693569 | 09.17.01 |
| Emerald cut | 4.04 | ct | DVS1 | 11671016 | 08.13.01 |



**DLA PIPER RUDNICK GRAY CARY**

DLA Piper Rudnick Gray Cary US LLP
1251 Avenue of the Americas
New York, New York 10020-1104
212.335.4500
T 212.335.4501
F N
W www.dlapiper.com

2 7 JUL 2006

HLG-CLA

CAPRICCI G. BILANDAL
capricci.bilandal@dlapiper.com
T 212.335.4638   F 212.884.8538

July 24, 2006

**BY FEDERAL EXPRESS**

Mr. Martin Glassborow
Heath Lambert Group
Friary Court, Crutched Friars
London, EC3N 2NP

**Re:    6.21 Carat Diamond – Laser Registry GIA 11326214**

Dear Mr. Glassborow:

We are attorneys for Gemological Institute of America ("GIA").

GIA has received from David Morris International, through its insurer, the Heath Lambert Group, a claim of ownership with respect to the above-referenced diamond (the "Diamond"), which was submitted to GIA by another GIA client (the "Submitting Client"), which also claims to be the rightful owner of the Diamond.

In an effort to facilitate resolution of these competing claims of ownership, we hereby request David Morris International's consent to disclose to the Submitting Client David Morris International's identity and contact information, and that of the Heath Lambert Group. We are requesting similar permission from the Submitting Client.

Please confirm the foregoing consents by countersigning and returning to us (by facsimile, if you prefer) a copy of this letter. Thank you.

Sincerely,

Capricci G. Bilandal

CONSENTED TO THIS _____ DAY OF _____, 2006
THE HEATH LAMBERT GROUP

BY:_____

CONSENTED TO THIS _____ DAY OF _____, 2006
DAVID MORRIS INTERNATIONAL

BY:_____



**DLA Piper US LLP**
1251 Avenue of the Americas, 29th Floor
New York, New York  10020-1104
www.dlapiper.com

Capricci Barush
capricci.barush@dlapiper.com
T  212.335.4638
F  212.884.8538

**VIA FACSIMILE AND ELECTRONIC MAIL**

January 24, 2007

Robert L. Tucker, Esq.
Tucker & Latifi, LLP
160 East 84th Street
New York, NY 10028
(212) 472-6262
(212) 744-6509 fax
(917) 741-1414 cell
rtucker@tuckerlatifi.com
*Counsel for Jay Waldmann*

Mr. Jeremy Morris
Ms. Nathalie Toullic
David Morris International Limited
Fourth Floor, 24-25 New Bond Street
London W1S2RR
(020) 7499 2200
(020) 7495 1194 (fax)
jeremy@davidmorris.com

Re:    6.21 Carat Diamond – Laser Registry GIA 11326214 and 14592676

Gentlemen:

We are attorneys for the Gemological Institute of America, Inc. ("GIA").

GIA has received from each of Jay Waldmann ("Waldmann") and David Morris International Limited ("David Morris"), competing claims of ownership with respect to the above-referenced diamond, which was submitted to GIA by Beny Sofer, on behalf of Waldmann, but for which David Morris also claims to be the rightful owner.

Please be advised that if, within thirty (30) days from the date of this letter, David Morris, does not (a) resolve with Waldmann these competing claims of ownership, or (b) obtain a directive from law enforcement or an order, from a court having jurisdiction over GIA directing GIA to hold the diamond or to deliver it to a third-party, then GIA will consider returning the diamond to Waldmann, as the party who delivered the diamond to GIA.

Please be guided accordingly.

Very truly yours,

Capricci Barush

cc:    Gemological Institute of America
       Todd B. Marcus, Esq.

**Kutner, Sarah Anne**

| | |
|---|---|
| **From:** | Robert Tucker [rtucker@tuckerlatifi.com] |
| **Sent:** | Monday, June 25, 2007 8:21 PM |
| **To:** | capricci.barush@dlapiper.com |
| **Cc:** | Kutner, Sarah Anne |
| **Subject:** | 6.21 Carat Diamond Jay Waldmann & David Morris International Limited |
| **Attachments:** | Waldmann-S Cutner ltr 6-14-07.pdf |

Dear Capricci: In connection with the above-referenced matter and your firm's representation of GIA, please be advised that Sarah Kutner of Nixon Peabody, counsel for the underwriters who insured David Morris International Limited ("Morris"), and I have recently entered into negotiations to resolve the dispute over the rightful ownership of the 6.21 Carat Diamond first brought to your client for evaluation by Mr. Benny Sofer (on behalf of Mr. Waldmann) over a year ago. As demanded by Ms. Kutner in her attached letter of June 14th, we kindly request that the referenced diamond be maintained by GIA for safe keeping until this matter can be resolved.

To date, this firm has not been provided with any proof or substantiation to evidence the claim that the referenced diamond is the property of Morris and/or his underwriters.

Thank you, Robert Tucker

Robert L. Tucker, Esq.
**TUCKER & LATIFI, LLP**
160 East 84th Street
New York, NY 10028
212-472-6262
212-744-6509 fax
917-741-1414 cell
www.TuckerLatifi.com

**Kutner, Sarah Anne**

| | |
|---|---|
| **From:** | Kutner, Sarah Anne |
| **Sent:** | Tuesday, March 04, 2008 4:58 PM |
| **To:** | Robert Tucker |
| **Subject:** | 6.21 Carat Diamond |
| **Attachments:** | FIRM_DM-10930463-v1-Resolute_David_Morris_-_pleadings.PDF |

Robert,

I have attached a copy of the pleadings that were recently filed in the Southern District of New York. Please let us know whether you will accept service on behalf of Mr. Waldmann. Thank you.

Sarah

**Sarah Anne Kutner**
Associate

## NIXON PEABODY

50 Jericho Quadrangle
Suite 300
Jericho, NY 11753-2728
P (516) 832-7561
C (516) 526-5233
F (866) 530-9407
skutner@nixonpeabody.com
www.nixonpeabody.com



The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (516) 832-7561. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.

4/22/2008

**Kutner, Sarah Anne**

| | |
|---|---|
| **From:** | Robert Tucker [rtucker@tuckerlatifi.com] |
| **Sent:** | Tuesday, March 04, 2008 6:18 PM |
| **To:** | Kutner, Sarah Anne |
| **Subject:** | RE: 6.21 Carat Diamond |

Dear Sarah: Mr. Waldmann lives in Düsseldorf, Germany and we do not have any authority to accept service on his behalf.  I owe your firm an Affidavit of Mr. Waldmann regarding the facts of his purchase of the stone in question.

<div align="center">Best regards, Robert</div>

Robert L. Tucker, Esq.
**TUCKER & LATIFI, LLP**
160 East 84th Street
New York, NY 10028
212-472-6262
212-744-6509 fax
917-741-1414 cell
www.TuckerLatifi.com

**From:** Kutner, Sarah Anne [mailto:skutner@nixonpeabody.com]
**Sent:** Tuesday, March 04, 2008 4:58 PM
**To:** Robert Tucker
**Subject:** 6.21 Carat Diamond

Robert,

I have attached a copy of the pleadings that were recently filed in the Southern District of New York.  Please let us know whether you will accept service on behalf of Mr. Waldmann.  Thank you.

Sarah

**Sarah Anne Kutner**
Associate

NIXON PEABODY

50 Jericho Quadrangle
Suite 300
Jericho, NY 11753-2728
P (516) 832-7561
C (516) 526-5233
F (866) 530-9407
skutner@nixonpeabody.com
www.nixonpeabody.com

4/22/2008

The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (516) 832-7561. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.



# NIXON PEABODY LLP

A T T O R N E Y S   A T   L A W

50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7500
Fax: (516) 832-7555

Sarah Anne Kutner
Direct Dial: (516) 832-7561
Direct Fax: (866) 530-9407
E-Mail: skutner@nixonpeabody.com

March 5, 2008

<u>By Regular Mail</u>

Jindrich Waldmann
c/o Waldmann Inc.
25 Main Street
Southampton, New York

Jindrich Waldmann
Scheurenstr 7
40215 Düsseldorf
Germany

Re:    6.21 Carat Diamond – Laser Registry GIA 11326214 and 14592676

Dear Mr. Waldmann,

I have enclosed copies of an declaratory judgment action that was recently filed in the Southern District of New York seeking a declaration as to the rightful ownership of the 6.21 carat diamond currently being held by the Gemological Institute of America ("GIA") in New York. Clearly we cannot properly serve you with these papers when you are outside New York, and as you reside in Germany, service is difficult. However, we believe that it is in your best interest to participate in this litigation, as GIA will not release the diamond at this point absent a court order instructing it to do so. Therefore, if you wish to participate in order for the court to make a determination as to the diamond's ownership, please designate an agent in New York to accept service on your behalf so that this action can proceed.

Thank you for your time and attention to this matter.

Sincerely,

Sarah Anne Kutner

10633951.1
10930679

## Kutner, Sarah Anne

| | |
|---|---|
| **From:** | Robert Tucker [rtucker@tuckerlatifi.com] |
| **Sent:** | Thursday, April 10, 2008 5:50 PM |
| **To:** | Kutner, Sarah Anne |
| **Subject:** | RE: 6.21 Carat Diamond |

Sarah: You have to serve him first before you can file a Motion for Default Judgment or have a Clerk's Certificate issued. He faxed me a letter from Germany in which you acknowledged that he HAS NOT been served. Let's set up a meeting next week (Monday to Thursday anytime at your office) to discuss and I will go through what his Affidavit would say. Robert

Robert L. Tucker, Esq.
**TUCKER & LATIFI, LLP**
160 East 84th Street
New York, NY 10028
212-472-6262
212-744-6509 fax
917-741-1414 cell
www.TuckerLatifi.com

**From:** Kutner, Sarah Anne [mailto:skutner@nixonpeabody.com]
**Sent:** Thursday, April 10, 2008 5:47 PM
**To:** Robert Tucker
**Subject:** RE: 6.21 Carat Diamond

Robert,

You may or may not know that an intial conference was scheduled to be held in the action that was filed against Mr. Waldmann in the Southern District of New York. I have adjourned the conference in the hopes that Mr. Waldmann will choose to participate in this litigation so that we can finally resolve this dispute. If Mr. Waldmann does not answer the complaint by April 25, I will be filing a default motion for which Judge Stein set a return date of May 9. I tell you this as a good faith effort to give Mr. Waldmann notice of these proceedings, as I do not have his contact information. I am mindful that you have already indicated that you do not have the authority to accept service on his behalf and have not made an appearance on his behalf.

Thank you for your time and courtesy,
Sarah

**Sarah Anne Kutner**
**Associate**

NIXON PEABODY

50 Jericho Quadrangle
Suite 300
Jericho, NY 11753-2728
P (516) 832-7561
C (516) 526-5233
F (866) 530-9407

4/23/2008

skutner@nixonpeabody.com
www.nixonpeabody.com

The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (516) 832-7561. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.

---

**From:** Robert Tucker [mailto:rtucker@tuckerlatifi.com]
**Sent:** Tuesday, March 04, 2008 6:18 PM
**To:** Kutner, Sarah Anne
**Subject:** RE: 6.21 Carat Diamond

Dear Sarah: Mr. Waldmann lives in Düsseldorf, Germany and we do not have any authority to accept service on his behalf. I owe your firm an Affidavit of Mr. Waldmann regarding the facts of his purchase of the stone in question.

Best regards, Robert

Robert L. Tucker, Esq.
**TUCKER & LATIFI, LLP**
160 East 84th Street
New York, NY 10028
212-472-6262
212-744-6509 fax
917-741-1414 cell
www.TuckerLatifi.com

---

**From:** Kutner, Sarah Anne [mailto:skutner@nixonpeabody.com]
**Sent:** Tuesday, March 04, 2008 4:58 PM
**To:** Robert Tucker
**Subject:** 6.21 Carat Diamond

Robert,

I have attached a copy of the pleadings that were recently filed in the Southern District of New York. Please let us know whether you will accept service on behalf of Mr. Waldmann. Thank you.

Sarah

**Sarah Anne Kutner**
Associate

NIXON PEABODY

50 Jericho Quadrangle

4/23/2008

Suite 300
Jericho, NY 11753-2728
P (516) 832-7561
C (516) 526-5233
F (866) 530-9407
skutner@nixonpeabody.com
www.nixonpeabody.com

The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (516) 832-7561. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.

4/23/2008

JUDGE STEIN

# UNITED STATES DISTRICT COURT

_____**SOUTHERN**_____ **District of** _____**NEW YORK**_____

Those Certain Companies and Those Certain
Underwriters at Lloyds, London,
Subscribing Severally but not Jointly to Policy of
Insurance Certificate Number NA3471501,
as Subrogors of David Morris International Limited,

**SUMMONS IN A CIVIL CASE**

Plaintiff,

**CASE NUMBER:**

V.

6.21 CARAT DIAMOND,

Defendant-in-Rem,

JAY WALDMANN,

Claimant-Defendant,

**08 CV 02006**

TO:  (Name and address of Defendant)

**Jay Waldmann
25 Main Street
Southampton, New York 11968**

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

**Aidan M. McCormack (AMM 3017)
Sarah Anne Kutner (SAK 6516)
Nixon Peabody LLP
437 Madison Avenue
New York, New York 10022**

an answer to the complaint which is served on you with this summons, within  20  days after service of this summons
on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**
_____

CLERK

_____
(By) DEPUTY CLERK

_____FEB 2 8 2008_____

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE<br>MARCH 19, 2008 |
| NAME OF SERVER *(PRINT)*<br>JOSEPH A. RAMOS | TITLE<br>PARALEGAL / PROCESS SERVER |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☒ Other (specify): PERSONALLY SERVED MARTIN M. BELL AN OFFICER OF BELL and COMPANY LLP, THE COMPANY AND ADDRESS DESIGNATED FOR SERVICE OF PROCESS FOR WALDMANN, INC,

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___3/27/08___     _Joseph Ramos_____
                Date                    Signature of Server

32-15 UTOPIA PKWY, FLUSHING NY 11358
Address of Server

---

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Those Certain Companies and Those Certain
Underwriters at Lloyds, London,
Subscribing Severally but not Jointly to Policy of
Insurance Certificate Number NA3471501,
as Subrogors of David Morris International Limited,

                              Plaintiff,

V.

6.21 CARAT DIAMOND,

                              Defendant-in-Rem,

JAY WALDMANN,

                              Claimant-Defendant,

**AFFIDAVIT OF**
**SERVICE**

**Case Number:**
**08-CV-02006**

STATE OF NEW YORK)
COUNTY OF NASSAU ) ss.:

**JOSEPH RAMOS**, being duly sworn, deposes and says:

That deponent is not a party to the action, is over 18 years of age and resides in Flushing County, New York.

That on the 5th day of March, 2008, I went to 25 Main Street, Southampton, NY 11968 and made my first attempt to personally serve a true copy of the within **Civil Cover Sheet, SDNY Summons & Complaint with supporting documents, 7.1 Disclosure Statement and Individual Judge Rules,** but could not do so because the premises were locked, no one was there and the premises appeared to have been completely vacated by the tenant, Waldman, Inc. Upon researching the New York State Department of State Division of Corporations database, a process address of 15 East 26th Street, Suite 1605, New York, New York, 10010 was obtained for Waldmann, Inc. A copy of the New York State Department of State Division of Corporations print out is annexed hereto as **Exhibit "A".**

That on the 10th day of March, 2008, I went to 15 East 26th Street, Suite 1605, New York, New York, 10010 and made my second attempt to personally serve a true copy of the within **Civil Cover Sheet, SDNY Summons & Complaint with supporting documents, 7.1 Disclosure Statement and Individual Judge Rules,** on Bell & Company LLP, the company and address designated for service of process with the New York State Department of State Division of Corporations, but could not do so because the premises had relocated. Upon researching the internet, a new address with obtained for Bell

10957815.1

& Company LLP. A copy of the New York State Department of State Division of Corporations print out listing Bell & Company LLP, as the company and address designated for service of process is annexed hereto as **Exhibit "B"**

On the 19th day of March, 2008, I went to 350 5th Avenue, Suite 7412, New York, New York 11018 and served a true copy of the within **Civil Cover Sheet, SDNY Summons & Complaint with supporting documents, 7.1 Disclosure Statement and Individual Judge Rules**, on Martin M. Bell, CPA, (Male, White Skin, Gray Hair, 51-65 Yrs., 5'4"-5'9", 160-200 Lbs.) an officer of Bell & Company LLP, and a person of suitable age and discretion, authorized to accept service on behalf of Waldmann, Inc.

Joseph Ramos

Sworn to before me this
26th day of March, 2008

Notary Public

YASMIRA ALONSO
NOTARY PUBLIC, State of New York
No. 4991549
Qualified in Nassau County
Commission Expires February 3, 2010

10957815.1

# EXHIBIT "A"

# NYS Department of State

## Division of Corporations

### Entity Information

---

Selected Entity Name: WALDMANN, INC.

Selected Entity Status Information

|  |  |
|---|---|
| **Current Entity Name:** | WALDMANN, INC. |
| **Initial DOS Filing Date:** | DECEMBER 16, 1996 |
| **County:** | NEW YORK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

JUNDRICH WALDMANN
C/O BELL & COMPANY
15 E 26TH ST RM 1605
NEW YORK, NEW YORK, 10010

**Chairman or Chief Executive Officer**

JINDRICH WALDMANN
C/O BELL & COMPANY LLP
15 E 26TH ST STE 1605
NEW YORK, NEW YORK, 10010-1599

**Principal Executive Office**

WALDMANN, INC.
C/O BELL & COMPANY LLP
15 E 26TH ST STE 1605
NEW YORK, NEW YORK, 10010-1599

**Registered Agent**

NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

# EXHIBIT "B"

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: BELL & COMPANY, INC.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | BELL & COMPANY, INC. |
| **Initial DOS Filing Date:** | JANUARY 24, 1992 |
| **County:** | NEW YORK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

MARTIN M. BELL
15 E. 26TH STREET
(STE. 1605)
NEW YORK, NEW YORK, 10010-1599

**Chairman or Chief Executive Officer**

MARTIN M. BELL
15 E. 26TH STREET
(STE. 1605)
NEW YORK, NEW YORK, 10010-1599

**Principal Executive Office**

BELL & COMPANY, INC.
15 E. 26TH STREET
(STE. 1605)
NEW YORK, NEW YORK, 10010-1599

**Registered Agent**

NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

**Kutner, Sarah Anne**

| | |
|---|---|
| **From:** | Kutner, Sarah Anne |
| **Sent:** | Thursday, April 10, 2008 5:47 PM |
| **To:** | 'Robert Tucker' |
| **Subject:** | RE: 6.21 Carat Diamond |

Robert,

You may or may not know that an intial conference was scheduled to be held in the action that was filed against Mr. Waldmann in the Southern District of New York. I have adjourned the conference in the hopes that Mr. Waldmann will choose to participate in this litigation so that we can finally resolve this dispute. If Mr. Waldmann does not answer the complaint by April 25, I will be filing a default motion for which Judge Stein set a return date of May 9. I tell you this as a good faith effort to give Mr. Waldmann notice of these proceedings, as I do not have his contact information.  I am mindful that you have already indicated that you do not have the authority to accept service on his behalf and have not made an appearance on his behalf.

Thank you for your time and courtesy,
Sarah

**Sarah Anne Kutner**
**Associate**

NIXON PEABODY ·

50 Jericho Quadrangle
Suite 300
Jericho, NY 11753-2728
P (516) 832-7561
C (516) 526-5233
F (866) 530-9407
skutner@nixonpeabody.com
www.nixonpeabody.com

The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (516) 832-7561. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.

**From:** Robert Tucker [mailto:rtucker@tuckerlatifi.com]
**Sent:** Tuesday, March 04, 2008 6:18 PM
**To:** Kutner, Sarah Anne
**Subject:** RE: 6.21 Carat Diamond

Dear Sarah: Mr. Waldmann lives in Düsseldorf, Germany and we do not have any authority to accept service on his behalf.  I owe your firm an Affidavit of Mr. Waldmann regarding the facts of his purchase of the stone in question.

Best regards, Robert

Robert L. Tucker, Esq.
**TUCKER & LATIFI, LLP**
160 East 84th Street
New York, NY 10028
212-472-6262
212-744-6509 fax
917-741-1414 cell
www.TuckerLatifi.com

---

**From:** Kutner, Sarah Anne [mailto:skutner@nixonpeabody.com]
**Sent:** Tuesday, March 04, 2008 4:58 PM
**To:** Robert Tucker
**Subject:** 6.21 Carat Diamond

Robert,

I have attached a copy of the pleadings that were recently filed in the Southern District of New York.  Please let us know whether you will accept service on behalf of Mr. Waldmann.  Thank you.

Sarah

**Sarah Anne Kutner**
Associate

NIXON PEABODY

50 Jericho Quadrangle
Suite 300
Jericho, NY 11753-2728
P (516) 832-7561
C (516) 526-5233
F (866) 530-9407
skutner@nixonpeabody.com
www.nixonpeabody.com



The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (516) 832-7561. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.

4/23/2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited, <br><br>                             Plaintiff, <br><br>                   v. <br><br> 6.21 CARAT DIAMOND, <br><br>                     Defendant-in-rem, <br><br> Jay Waldmann, <br><br>                     Claimant-Defendant. | **Clerk's Certificate of Default** <br><br><br><br> Case No. 08-CV-2006 (SHS) |

I, J. MICHAEL McMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action was commenced on February 28, 2008 with the filing of a summons and complaint. *See* complaint filed at docket entry #1. Copies of the summons and complaint were served on defendant Jay Waldmann on March 19, 2008. *See* proof of service filed at docket entry #5.

I further certify that the docket entries indicate that to date, defendant Jay Waldmann has not filed an answer or otherwise responded to the complaint herein. The default of defendant Jay Waldmann in this action is hereby noted.

Dated: New York, New York
      April ___, 2008

                                   **J. Michael McMahon**
                                   Clerk of the Court

                                   By: _____
                                        Clerk

**Kutner, Sarah Anne**

| | |
|---|---|
| **From:** | Robert Tucker [rtucker@tuckerlatifi.com] |
| **Sent:** | Monday, June 25, 2007 8:21 PM |
| **To:** | capricci.barush@dlapiper.com |
| **Cc:** | Kutner, Sarah Anne |
| **Subject:** | 6.21 Carat Diamond Jay Waldmann & David Morris International Limited |
| **Attachments:** | Waldmann-S Cutner ltr 6-14-07.pdf |

Dear Capricci:   In connection with the above-referenced matter and your firm's representation of GIA, please be advised that Sarah Kutner of Nixon Peabody, counsel for the underwriters who insured David Morris International Limited ("Morris"), and I have recently entered into negotiations to resolve the dispute over the rightful ownership of the 6.21 Carat Diamond first brought to your client for evaluation by Mr. Benny Sofer (on behalf of Mr. Waldmann) over a year ago.  As demanded by Ms. Kutner in her attached letter of June 14th, we kindly request that the referenced diamond be maintained by GIA for safe keeping until this matter can be resolved.

To date, this firm has not been provided with any proof or substantiation to evidence the claim that the referenced diamond is the property of Morris and/or his underwriters.

<div align="center">Thank you, Robert Tucker</div>

Robert L. Tucker, Esq.
**TUCKER & LATIFI, LLP**
160 East 84th Street
New York, NY 10028
212-472-6262
212-744-6509 fax
917-741-1414 cell
www.TuckerLatifi.com

# NIXON PEABODY
ATTORNEYS AT LAW

50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7500
Fax: (516) 832-7555

Sarah Anne Kutner
Direct Dial: (212) 940-3778
E-Mail: skutner@nixonpeabody.com

June 14, 2007

*Via E-mail and Federal Express*

Capricci Barush, Esq.
DLA Piper US, LLP
1251 Avenue of the Americas, 29th Floor
New York, New York 10020

   Re:  6.21 Carat Diamond – Laser Registry GIA 11326214 and 14592676

Dear Ms. Barush:

   This firm represents the underwriters who insured David Morris International Limited ("Morris") in connection with the above-referenced diamond. The above-referenced diamond is now in the possession of your client, the Gemological Institute of America ("GIA"). We hereby place you, on behalf of GIA, on notice that the Morris underwriters claim ownership and possession of the above-referenced diamond.

   We demand the surrender of the diamond to the Morris underwriters. We also request that GIA hold the diamond in its New York location until the dispute over the diamond's ownership is resolved.

   Please contact me to acknowledge receipt of this letter and discuss the diamond's transfer. Thank you for your anticipated cooperation.

         Sincerely,

         Sarah Anne Kutner

cc:  Robert L. Tucker, Esq.
   Tucker & Latifi, LLP
   160 East 84th Street
   New York, New York 10028
   *Counsel for Jay Waldman*

10618042.1