UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited,<br><br>         Plaintiff,<br><br>  v.<br><br>6.21 Carat Diamond,<br><br>         Defendant-in-rem,<br><br>Jay Waldmann,<br><br>         Claimant-Defendant. | Case No. 08-CV-2006<br>(SHS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR A DECLARATION ON DEFAULT AGAINST DEFENDANT JAY WALDMANN**

Plaintiffs Those Certain Companies and Those Certain Underwriters at Lloyds, London, Subscribing Severally but not Jointly to Policy of Insurance Certificate Number NA3471501, as Subrogors of David Morris International Limited (the "Insurers"), by and through their counsel Nixon Peabody LLP, submit this Memorandum of Law in Support of its Motion for a Declaratory Judgment and Order on Default against defendant Jay Waldmann, and in support thereof state as follows:

**PRELIMINARY STATEMENT**

This litigation arises out of a jewelry theft that took place in London in December 2001. Masked men smashed the display window of David Morris International Ltd. ("David Morris"), a high-end jewelry store on New Bond Street, in broad daylight, and stole six jewelry pieces laden

with diamonds. Included in the stolen pieces was a 6.21 carat diamond set in a platinum ring, which is the defendant-in-rem at issue in this litigation (the "Diamond").

At the time of the theft, David Morris was insured under policy of insurance number NA3471501, to which the Insurers subscribed, with a policy period of July 1, 2001 to June 30, 2002 (the "Policy"). David Morris made a claim under the Policy for which the Insurers subsequently paid $2,498,807.38 and £50,245.58. As a result of this payment, the Insurers became the subrogated owners of the stolen jewelry pursuant to the terms of their agreement with David Morris.

In March 2007, the stolen Diamond was submitted on behalf of defendant Jay Waldmann to the Gemological Institute of America ("GIA") to be graded and certified. However, GIA recognized the Diamond, which they had previously certified, and notified David Morris that it was in their possession. The Insurers, asserting their rights as the subrogated owners of the Diamond, have commenced this action seeking a judgment on default: (1) Declaring that the defendant has no right, title or interest in or to the Diamond, and that all right, title and interest in and to the Diamond is vested exclusively in the Insurers; (2) Ordering that the Diamond be turned over immediately by GIA to the Insurers, the rightful owners of the Diamond as subrogors of David Morris; (3) Imposing a constructive trust on the Diamond; (4) Ordering the defendant to produce, in writing, any and all information in his knowledge or possession regarding the identity of the person from whom or the entity from which he purchased the Diamond; (5) Awarding the Insurers the costs and disbursements of this action; and (6) Awarding the Insurers such other and further relief as the Court deems just and proper.

The defendant is in default in this action. He was served and has not answered within the permissible time period under Fed. R. Civ. Pro. 12(a). Therefore, the Court should grant the instant motion for a declaratory judgment and order on default against the defendant.

## STATEMENT OF FACTS

I. **The Underlying Facts and Claim**

   A. *The Jewel Theft*

David Morris maintains a high-end jewelry store at 24/25 New Bond Street, London, United Kingdom. David Morris purchased the Diamond from G. Music and Sons Limited, 63-66 Hatton Garden, London UK, for a purchase price of $111,500.00, in November 2000. *See* Invoice, attached as **Exhibit A**.[1]

Before David Morris purchased the diamond, it was graded and registered with GIA, which assigned the diamond GIA number PD1846 and issued a corresponding diamond grading report number 11326214 on October 16, 2000 (the "Report"). *See* Report, attached as **Exhibit B**. The G. Music and Sons invoice bears the numbers PD1846, which corresponds with the same number on the Report. *See* **Exhibits A** and **B**. The Report stated that the diamond weighed 6.21 carats and measured 12.69mm x 9.35mm x 5.84mm. The report further stated that the diamond's depth measures 62.5%, its table measures 56%, its polish and symmetry were classified as "good," its clarity was classified "WS1" and its color was classified "E." *See* **Exhibit B**.

After purchasing the diamond, David Morris inventoried the piece in its collection under Stock Card number 11-21-849 on November 15, 2000. *See* Stock Card, attached as **Exhibit C**. The Stock Card indicates that labor was performed on the Diamond while setting it in a platinum ring.

On December 29, 2001, at 11:15 a.m. two masked thieves smashed the front glass window of David Morris' New Bond Street store with sledge hammers and stole several pieces of jewelry from the window display (the "Theft"). *See* December 30, 2001 *BBC News* article, and January 10, 2002 *Evening Standard* article, attached as **Exhibit D**.

---

[1]   Exhibits A through K are attached to the accompanying affidavit of the plaintiff and Exhibits L through T are attached to the accompanying declaration of Sarah Anne Kutner.

3

The Diamond, set in a platinum ring at the time, was stolen in the Theft, along with five other rings, a diamond necklace and a white gold and diamond bracelet-watch. *See Evening Standard* article, at **Exhibit D**. The stolen jewelry was estimated to be worth almost £4 million. *See* **Exhibit D**. David Morris employees and British authorities pursued the thieves from the store, but were unable to apprehend them. *Id*. It is believed that British authorities have not apprehended the thieves or recovered any of the stolen stones to date.

### B. *Insurance Policy Number NA3471501*

Before the Theft, David Morris acquired insurance policy number NA3471501 through the broker Heath Lambert Limited with a policy period of July 1, 2001 to June 30, 2002. *See* London market slip, attached as **Exhibit E** and Policy, attached as **Exhibit F**. Several different companies and Insurers subscribed to the policy, sharing the risk severally, not jointly. *See* "Several Liability Notice", at **Exhibit E**.

The Policy contains the following language:

**PROPERTY INSURED**

This policy covers valuables defined as "Stock" including other people's goods, including jewellery, diamonds, precious stones of any sort whatsoever, gold or silver or ornaments or plates, pearls and/or merchandise and material usual to the conduct of the Assured's business, cash, banknotes or script, cheques and drafts, the proceeds of the sale of the stock or otherwise, whether the same be the property of the Assured or entrusted to him or them on sale or return or on approbation or for work to be done thereon or for safe custody or for any other purpose whatsoever, and other interest incidental to Assured's business.

The valuables hereon are covered from the time the Assured acquires an interest therein, and this insurance continues until that interest ceases, but in respect of sendings, cover continues until delivered to the premises of the party for whom they are intended or until the interest of the Assured ceases, whichever is the later.

**SITUATION**

The valuables insured hereon are covered whilst anywhere in the world in transit or at rest.

4

**RISKS COVERED**

This insurance covers all risks of physical loss of or damage to the insured valuables from whatever cause arising. Subject to the terms, conditions and exclusions of this Policy.

\* \* \*

**24.   SCHEDULE OF ASSURED'S**

> David Morris International Ltd.
> and/or any other Subsidiary or Associated Company or Partnership of any of the above which is now or may be constituted.

\* \* \*

*See* **Exhibit F**.

### C.   *The Claim and Payment*

After the Theft, David Morris tendered a claim under the Policy for the stolen items. The Insurers consequently performed an extensive audit of David Morris' books and records documenting the value of the stolen jewelry. *See* Final Report on Theft Claim by David Morris, attached as **Exhibit G**. The Insurers paid $2,498,807.38 and £50,245.58 to David Morris pursuant to the terms of a Form of Acceptance and Schedule of Stolen Jewelry and Watch Attaching to Form of Acceptance ("Form of Acceptance"). *See* Form of Acceptance, attached as **Exhibit H**. Under the terms of the Form of Acceptance, David Morris agreed that "upon payment of the said sum by the Interested Insurers they will become subrogated to all our title, rights and interests in the items subject of the attached schedule and in any damages or monies recoverable in respect thereof in respect of salvage or otherwise whatsoever." *See* **Exhibit H**.

Therefore, because the Insurers made full payment on the claim pursuant to the terms of the Form of Acceptance, they are fully subrogated to David Morris' rights, title and interest in the items listed on the Schedule to the Form of Acceptance, which includes the Diamond. *See* **Exhibit H**.

The Insurers paid the claim in January 2002, over six years ago. As such, the Insurers are the rightful owners of the Diamond.

### D.   *Recovery of Stolen Diamond*

The Insurers were first notified by telephone on or about July 17, 2006 that GIA had recovered a diamond that may have been part of the jewelry stolen in the Theft from David Morris on December 29, 2001. *See* e-mails dated July 19 and July 24, 2006, attached as **Exhibit I**. The July 19, 2006 e-mail attached a letter wherein David Morris requested that GIA register in it's stolen database the stones stolen from David Morris in the Theft. The letter attached a list of the stolen stones with their corresponding GIA numbers. *See* **Exhibit I**. Included on the list is the Diamond, listed at 6.21 carats, certified on October 16, 2000.

The Insurers received a letter dated July 24, 2006 from DLA Piper, attorneys for GIA, acknowledging that GIA had received a claim of ownership for the Diamond from David Morris "through its insurer, the Heath Lambert Group" (broker who issued the Policy). *See* letter dated July 24, 2006, attached as **Exhibit J**. The letter further indicated that there was a competing claim of ownership by the "Submitting Client" and sought the consent of David Morris and Heath Lambert to disclose their identities and contact information to that Submitting Client. GIA indicated that it was seeking similar permission from the Submitting Client.

GIA sent a letter dated January 24, 2007 to both David Morris and also to Tucker & Latifi LLP, as *"Counsel for Jay Waldmann."* The letter confirmed that both parties had submitted competing claims of ownership for the Diamond *See* DLA Piper's January 24 letter, attached as **Exhibit K**. The letter references two numbers, one of which – 11326214 – is identical, of course, to the number on GIA's October 16, 2000 Report. *See* **Exhibit B**. This confirms that this is the stolen

6

Diamond. Mr. Tucker subsequently identified himself as Mr. Waldmann's attorney. *See, e.g.,* email dated June 25, 2007, attached as **Exhibit L**.

The Diamond is being held by GIA with the consent of both the Insurers and Mr. Waldmann, through Mr. Tucker. *See* e-mail dated June 25, 2007, attached as **Exhibit T**. The Court has *in rem* jurisdiction over the Diamond because it is being held by GIA at their New York location, upon information and belief, at 589 Fifth Avenue, New York, NY 10017, until they are presented with an order from a court or similar authority directing to whom the Diamond is to be given as the rightful owner. *See* **Exhibit T**. GIA has not conveyed a claim of ownership to the Diamond to the Insurers or this firm. Upon information and belief, GIA does not intend to make such a claim and is simply holding the Diamond until a court or similar authority decides who is its rightful owner, at which time it will surrender the Diamond to that owner. Therefore, the parties to this action have constructive possession of the Diamond, and the Court has *in rem* jurisdiction over it, giving the Court the right to render a judgment as to its rightful owner.

The Insurers, asserting their rights as the subrogated owners of the Diamond, commenced this action seeking, among other things, the return of the stolen Diamond. However, Mr. Waldmann came in possession of the stolen diamond, the seller did not have proper legal title of the diamond to convey since it was stolen. Accordingly, the Insurers have superior right, title and interest in the Diamond under settled law. *See United States SEC v. Universal Express, Inc.*, 2008 U.S. Dist. LEXIS 35342 (S.D.N.Y. 2008) (holding that a "thief cannot convey a good title to stolen property") (citing *Newton v. Porter*, 69 N.Y. 133, 137 (1877)); *United States v. Crawford Tech. Servs.*, 2004 U.S. Dist. LEXIS 5824 (S.D.N.Y. 2004) ("A good faith purchaser simply cannot obtain title to stolen property because a thief has no title to give"). The Insurers also seek full disclosure from Waldmann as to where and from whom he purchased the Diamond. Waldmann or those he

acquired the diamond from is likely to possess information that will lead to their recovery of the other stolen jewelry or perhaps the other stolen jewelry itself. It is in the best interests of the public and justice if Waldmann is ordered to disclose information regarding the Theft or the other stolen items.

### F.   *Waldmann's Default*

This action was commenced by the Insurers on February 28, 2008. *See* complaint at Docket Entry #1. Mr. Waldmann was provided with the summons and complaint through Mr. Tucker, his attorney. *See* e-mail dated March 4, 2008, attached as **Exhibit M** (attachments omitted). Mr. Tucker indicated in a reply e-mail that he did not have authority to accept service on behalf of Mr. Waldmann. A copy of Mr. Tucker's reply e-mail is attached as **Exhibit N**.

Mr. Waldmann was further provided with the summons and complaint in this action through regular mail, both to his Southampton address, and to his address in Germany. *See* letter dated March 5, 2008, attached as **Exhibit O** (attachments omitted). Mr. Tucker admitted that Mr. Waldmann did in fact receive the correspondence sent to him in Germany. *See* reply e-mail dated April 10, 2008, attached as **Exhibit P**.

Mr. Waldmann was also served on March 19, 2008 through his agent, Martin M. Bell, of Bell & Company LLP at 350 5th Avenue, Suite 7412, New York, New York. *See* affidavit of service, attached as **Exhibit Q**, and at Docket Entry #5. Bell & Company LLP is listed on the New York Department of State, Division of Corporations website as the agent for service of process for Mr. Waldmann's corporation, Waldmann Inc. *Id.* At the time of service, Mr. Bell stated that he was authorized to accept service on Mr. Waldmann's behalf. *Id.*

Mr. Waldmann was repeatedly given notice of this lawsuit, and an opportunity to respond. Further, his attorney Mr. Tucker was notified that the initial conference, originally scheduled for

April 11, was adjourned, and that the Insurers intended to file a default motion against Mr. Waldmann. *See* e-mail dated April 10, 2008, attached as **Exhibit R**.

Mr. Waldmann has failed and refused to answer the complaint in this action. That is so despite the many notices provided him and repeated opportunities to respond and be heard, both through his regular business contacts and through his attorney, with whom Mr. Waldmann seems to be in regular contact. *See, e.g.,* **Exhibit P**. By all appearances, Mr. Waldmann has abandoned the Diamond and left the country. Mr. Waldmann's time to respond to the complaint has now expired under FRCP 12(a), and thus he is in default.

# ARGUMENT

## POINT I

### THE INSURERS ARE ENTITLED TO A JUDGMENT ON DEFAULT.

The Clerk of this Court entered the defendant's Default for his failure to respond to the complaint or otherwise appear pursuant to Fed. R. Civ. P. 55(a). A copy of the Certificate of Default is attached as **Exhibit S**. Now, pursuant to Fed. R. Civ. P. 55(b), this Court may enter a judgment by default against defendant Jay Waldmann.

Pursuant to Federal Rule 12(a)(1)(A)(i), the defendant was required to answer the Complaint no later than 20 days from March 19, 2008, or by April 8, 2008. To date, however, the defendant has failed to answer or otherwise respond to the Complaint. Counsel for the Insurers has communicated with and even indicated an intention to file a default motion to the defendant and to Mr. Tucker, his personal attorney. Neither the defendant nor his attorney have indicated that they

intend to respond to the Complaint in any way. Accordingly, the Insurers are entitled to a declaratory judgment on default pursuant to Fed. R. Civ. P. 55(b).

In determining whether a default judgment should be entered under Fed. R. Civ. P. 55(b), the courts must use sound discretion and consider several factors. *See Ann Taylor, Inc. v. Interstate Motor Carrier Inc.*, 2004 U.S. Dist. LEXIS 18173, *6 (S.D.N.Y. 2004). The factors the Court should consider are (1) the amount of money potentially involved; (2) whether material issues of fact or issues of substantial public importance are at issue; (3) whether the default is largely technical; (4) whether plaintiff has been substantially prejudiced by the delay involved; and (5) whether the grounds for default are clearly established or are in doubt. The court may also consider how harsh an effect a default judgment might have, whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant. *Id.*

Here, each factor weighs on the side of the Insurers. The only monetary remedy that the Insurers have requested are the costs and disbursements incurred in bringing this action, which is minimal, as the action is still in the pleading stages. The Insurers have established that there are no issues of material fact through the various records documenting the Diamond's history and identity. It is strongly in the public's interest for the Diamond to be returned, as theft goes against all established societal norms and costs the government time and money. The defendant's default is obviously not technical, as his agent, Martin M. Bell, his attorney, Robert L. Tucker, and indeed even the defendant himself, are aware that this lawsuit is pending. *See* **Exhibits M, O,** and **P.**

The plaintiffs have been prejudiced by this delay, as they paid David Morris' claim for the diamond over six years ago, yet the property that they paid for continues to be held by a third party. The grounds for default have been firmly established, as the defendant has been served and he, his agent and attorney have all been provided with notice of the action and a copy of the complaint, yet

10

the defendant has still failed and refused to respond past the allowable time to do so. Further, the defendant has certainly defaulted through intentional neglect, as it appears that the defendant has purposely left the jurisdiction and abandoned the Diamond to which he has laid claim in order to avoid participating in this lawsuit.

Finally, granting a declaratory judgment on default would not have a harsh effect or prejudice the defendant. It is likely that he purchased the Diamond at a substantially below-market price, when he either knew or should have known that a Diamond of that quality should be priced much higher unless it is stolen. The defendant has also not shown any interest in trying to regain possession of the Diamond. Therefore, it is in the public interest not only that the Diamond be returned to its rightful owners, but also that the Court order the defendant to disclose the details about his purchase of the Diamond so that authorities can attempt to apprehend the thieves.

Upon entry of default judgment for failure to plead or otherwise defend against a complainant, a defendant admits every well-pleaded allegation of the Complaint. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997); *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Therefore, the Insurers are entitled to prevail on all well-pled allegations in the complaint.

## POINT II

## THE INSURERS ARE THE RIGHTFUL OWNERS OF THE DIAMOND

A.   *The Insurers are the Subrogors of David Morris' Ownership Rights*

After the Diamond was stolen in 2001, the Insurers paid $2,498,807.38 and £50,245.58 on David Morris' claim under the Policy pursuant to the terms of the Form of Acceptance. *See* **Exhibit H**. Under the terms of the Form of Acceptance, David Morris agreed that "upon payment of the said sum by the Interested Insurers they will become subrogated to all our title, rights and

interests in the items subject of the attached schedule and in any damages or monies recoverable in respect thereof in respect of salvage or otherwise whatsoever."

Under settled law, Waldmann cannot be the rightful owner since the Diamond was stolen from David Morris. *See United States SEC v. Universal Express, Inc.*, 2008 U.S. Dist. LEXIS 35342 (S.D.N.Y. 2008) (holding that a "thief cannot convey a good title to stolen property") (citing *Newton v. Porter*, 69 N.Y. 133, 137 (1877)); *United States v. Crawford Tech. Servs.*, 2004 U.S. Dist. LEXIS 5824 (S.D.N.Y. 2004) ("A good faith purchaser simply cannot obtain title to stolen property because a thief has no title to give").

The Insurers made payment on the claim pursuant to the terms of the Form of Acceptance. Accordingly, they are fully subrogated to David Morris' rights, title and interest in the items listed on the schedule, which includes the Diamond. *See* **Exhibit H**. The Insurers made payment in January 2002, over six years ago. As the Insurers have shown that they have superior right, title and interest in the Diamond as subrogors of David Morris, this Court should grant the Insurers instant motion as they are entitled to the relief sought in the well-pleaded complaint.

**B.    *In Rem Jurisdiction***

Finally, the Insurers are entitled to a judgment declaring that they are the rightful owners of the defendant-*in-rem* Diamond. The Court has *in rem* jurisdiction over the Diamond based on its presence within the Court's jurisdiction and the Court's constructive possession of it. GIA is holding the Diamond at its Fifth Avenue location with the consent of the Insurers and of Mr. Waldmann's attorney, Mr. Tucker. *See* **Exhibit T**. Furthermore, GIA has not claimed that it is the owner of the Diamond and upon information and belief, does not intend to do so. On the contrary, GIA has indicated that it will turn over the Diamond to the rightful owner upon the rendering of a court order directing them to do so.

This Court has held that

> [t]he concept of *in rem* jurisdiction is that the court has jurisdiction over property, a *res*, and is thereby empowered to adjudicate interests in the res. A party having or claiming an interest in the *res*, given notice of the proceeding, may choose to appear in the proceeding to assert its rights, thereby subjecting itself to the limited *in rem* jurisdiction of the court, or it may not choose to do so. Either way, the party given notice will be bound by the judgment of the court with respect to property rights in the *res*."

*In re Metromedia Fiber Network, Inc. v. Various State and Local Taxing Authorities*, 299 B.R. 251 (S.D.N.Y. 2003); *see also Hanson v. Denckla*, 357 U.S. 235, 246 (U.S. 1958) ("Founded on physical power, the *in rem* jurisdiction of a state court is limited by the extent of its power and by the coordinate authority of sister States. The basis of the jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum State.") (citations omitted).

Mr. Waldmann has notice of this proceeding and of the Insurers claim to the Diamond and has chosen not to pursue his own claim to ownership of it. In fact, he has, by all appearances, fled the jurisdiction and abandoned his claim. Therefore, this Court, has it has jurisdiction to issue a declaration as to the rightful owner of the Diamond, should grant the Insurers the relief requested, namely by issuing a declaration declaring that they are the rightful owners of the Diamond and that GIA should turn over possession of the Diamond to the Insurers.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that defendant Jay Waldmann's failure to answer or otherwise respond to the complaint, and the Insurers' superior right, title and interest in the Diamond, entitles the Insurers to a judgment on default against the Defendant. Accordingly, the Insurers respectfully request that this Court enter an Order granting the Insurers motion for a judgment on default (1) Declaring that the defendant has no right, title or interest in or

to the Diamond, and that all right, title and interest in and to the Diamond is vested exclusively in the Insurers; (2) Ordering that the Diamond be turned over immediately by GIA to the Insurers, the rightful owners of the Diamond as subrogors of David Morris; (3) Imposing a constructive trust on the Diamond; (4) Ordering the defendant to produce, in writing, any and all information in his knowledge or possession regarding the identity of the person from whom or the entity from which he purchased the Diamond; (5) Awarding the Insurers the costs and disbursements of this action; and (6) Awarding the Insurers such other and further relief as the Court deems just and proper.

Dated:   May 9, 2008

                                  **NIXON PEABODY LLP**

                                  _/s/ Aidan M. McCormack_
                                  Aidan M. McCormack (AMM-3017)
                                  Sarah Anne Kutner (SAK-6516)
                                  437 Madison Avenue
                                  New York, New York 10022
                                  (T) (212) 940-3000
                                  (F) (212) 940-3111
                                  _Attorneys for Plaintiffs_

10987048.1